[No. 27120-6-II.   Division Two.   April 1, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. RONALD ALLEN TVEDT, *Appellant*.

*Pattie Mhoon*, for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *Kathleen Proctor* and *Barbara L. Corey-Boulet, Deputies*, for respondent.

BRIDGEWATER, J. — Ronald Allen Tvedt was convicted on 12 counts of first degree robbery. Tvedt alleges that the court subjected him to double jeopardy when it convicted on counts VIII through XI because, as to those counts, his acts satisfied the "unit of prosecution" for robbery only twice. We are asked to define the "unit of prosecution" and determine whether Tvedt's acts satisfied that unit of prosecution two or four times. Under RCW 9A.56.190, which defines robbery, the "unit of prosecution" is each forcible taking of property from the person or in the presence of some person who has an ownership or possessory interest in, or some representative capacity over, the property taken. As Tvedt forcibly took property directly from the person or in the presence of four people who had ownership of or a representative capacity over the property taken, conviction on counts VIII through XI did not subject Tvedt to double jeopardy. Thus, we affirm.

## FACTS

In September 2000, Tvedt went on a crime spree that generated 12 counts of first degree robbery. Counts VIII through XI carried a deadly weapon enhancement. Tvedt pleaded guilty to counts I through VII and count XII. On counts VIII through XI, Tvedt stipulated to facts, in a bench trial, sufficient for a finding of guilt. Counts VIII through XI are the subject of this appeal.

Tvedt stipulated to the following facts. On September 23, 2000, Tvedt entered a Pierce County Exxon station. Monty Younce, the owner, and his cashier, Addie Schaefer, were present. After selecting a beverage, Tvedt went behind the counter, drew an 8- to 10-inch knife, and herded Schaefer into Younce's office. Tvedt forced Younce and Schaefer to the floor and demanded the store's money. Younce told him where to find it. Tvedt took the money, which was in a blue deposit bag. Then, still armed with the knife, Tvedt took the keys to Younce's truck and fled. These facts provide the basis for counts VIII and IX. We will refer to this event as the Exxon robbery.

On September 25, 2000, Tvedt robbed a Texaco station. At this station, two workers were present, Jack Shepherd, the manager, and Teresa Piper, the assistant manager. Again, after selecting a beverage, Tvedt drew his knife and went behind the counter. He stuck the knife in Shepherd's side, forced Shepherd and Piper to the rear of the store, and forced them both onto the floor. Tvedt demanded the store's money. Piper told him that the store's "weekend receipts" were in a paper bag next to the safe, and Tvedt walked away with approximately $7,550. Clerk's Papers (CP) at 26. Before leaving, Tvedt took Shepherd's cell phone. These facts spawned counts X and XI. We refer to this event as the Texaco robbery.

Tvedt assigns error to his convictions on counts VIII through XI. Essentially, Tvedt argues that each event, the Texaco and Exxon robberies, comprises a single unit of prosecution. Therefore, according to Tvedt, only two charge-

able robberies occurred. The State argues that Tvedt was not subjected to double jeopardy because, during the Exxon and Texaco robberies, four different people were placed in fear by Tvedt's conduct.

## ANALYSIS

### I. Unit of Prosecution

■■■ The double jeopardy clause of the Fifth Amendment offers three separate constitutional protections. *State v. Gocken*, 127 Wn.2d 95, 100, 896 P.2d 1267 (1995). The state constitutional rule against double jeopardy, article I, section 9 of the Washington State Constitution, offers the same scope of protection as its federal counterpart. *Gocken*, 127 Wn.2d at 107. One aspect of double jeopardy protects a defendant from being punished multiple times for the same offense. *Gocken*, 127 Wn.2d at 100; *State v. Calle*, 125 Wn.2d 769, 772, 888 P.2d 155 (1995). When a defendant is convicted more than once for violation of a single criminal statute, we review the statute in question to determine the criminal conduct or unit of prosecution that the legislature intended to be a punishable act. *State v. Adel*, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998). If a defendant has committed only one unit of prosecution, he may be convicted only once. *Adel*, 136 Wn.2d at 634.

To determine the unit of prosecution for robbery, an issue of first impression in this state, we must decide what act or course of conduct the legislature chose to criminalize by enacting the robbery statute. *See Adel*, 136 Wn.2d at 634. The first step in determining the unit of prosecution is to examine the statute in question. *Adel*, 136 Wn.2d at 635.

■■■ RCW 9A.56.190 sets forth the substantive elements of robbery:

A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be

used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.

RCW 9A.56.190. Here, Tvedt used force to *obtain* possession of personal property from the person or in the presence of some person who possessed, owned, or held some representative capacity over the property taken.

Our Supreme Court examined the robbery statute in the 1909 case, *State v. Hall*, 54 Wash. 142, 102 P. 888 (1909). The current robbery statute is the same in all essential respects. The *Hall* court stated:

> to constitute the crime of robbery[,] the property must be taken from the person of the owner, or from his immediate presence, or from some person, or from the immediate presence of some person, having control and dominion over it. For instance, if A takes the property of B from the immediate presence of C, by force or putting in fear, A is not guilty of the crime of robbery unless C had control and dominion over B's property at the time of the taking.

*Hall*, 54 Wash. at 143-44.

Division One of this court similarly construed the robbery statute in *State v. Latham*, 35 Wn. App. 862, 864-65, 670 P.2d 689 (1983), *review denied*, 100 Wn.2d 1035, 102 Wn.2d 1018 (1984). In *Latham*, the codefendants, Latham and Dennis, requested a ride from two other men, assaulted them, and stole the car that the group rode in. Only one of the victims owned the car. Each defendant was convicted of two robberies. Faced with the same robbery statute as here, the court followed *Hall*, holding that "[a] person must have an ownership interest in the property taken, or some representative capacity with respect to the owner of the property taken, or actual possession of the property taken, for the taking of the property to constitute a robbery." *Latham*, 35 Wn. App. at 864-65. As only the driver had

ownership or possession of the car, and as the passenger was not in a representative capacity over it, the court reversed one of the convictions for both defendants.

In its decision, *Latham* adopted the *Hall* hypothetical (see above) and elaborated, by example, on what satisfies the ownership, possession or representative capacity requirement: a taking from (a) one having the care, custody, control, management, or possession of the property is sufficient—e.g., a bailee, agent, employee, or other representative of the owner; or (b) someone having a right to possession superior to that of the robbery defendant, such as a thief in possession of property subsequently taken by the robber or a business visitor who is ordered to remove money from a business register and thereby exercises dominion and control over the money. *Latham*, 35 Wn. App. at 865-66.

Thus, the unit of prosecution under RCW 9A.56.190 is each forcible taking of property from the person or presence of the owner of that property or from the person or presence of a person who possesses the property or is charged, by some representative capacity, with care, custody, or control of the property.

Prior cases addressing robbery requirements are consistent. *State v. Rupe* illustrates an interest, not ownership, that *Latham* deems sufficient to support a robbery charge. *State v. Rupe*, 101 Wn.2d 664, 683 P.2d 571 (1984). In *Rupe*, a first degree robbery and aggravated murder prosecution, the defendant forcibly took money from two different tellers at the same bank. He argued that only one robbery occurred because the bank owned both sums of money taken. The court disagreed, stating, "[t]he robbery . . . statute does not require that the person from whom the property is taken own that property." *Rupe*, 101 Wn.2d at 693. The court affirmed both robbery convictions because each teller had possession and control of the property taken. *Rupe*, 101 Wn.2d at 693.

The defendant in *State v. Turner* also presented a double jeopardy challenge to his two robbery convictions. *State v.*

*Turner*, 31 Wn. App. 843, 644 P.2d 1224, *review denied*, 97 Wn.2d 1029 (1982). We rejected the challenge under the same evidence test and stated, "Mr. Sackman turned over his wallet and Mrs. Sackman turned over her rings; each responded to demands of defendant or his accomplice. These facts supported separate and independent charges of robbery. Each offense could stand alone." *Turner*, 31 Wn. App. at 847. *Turner* is consistent with our holding here and establishes that it is not the "event," i.e., the robbery of the Turner's house or the Exxon or Texaco stations, that delineates the unit of prosecution.

The rationale is the same in both *Turner* and *Rupe*. Neither court was ultimately persuaded by the number of persons present at the scene, the number of items taken, or a characterization of the event as a single transaction. Rather, the courts focused on the number of forcible takings that occurred and demonstrated that a forcible taking requires that a person own, possess, or have some representative capacity over the property that is taken from her, or from her presence, by force. In *Rupe*, two robberies occurred because the defendant used force to strip two different tellers of cash that they either possessed or had some representative capacity over by virtue of their employment and physical presence at the bank during the robbery. And two robberies occurred in *Turner* because the defendant, or an accomplice, forcibly took personal property from the person or presence of two people who had an ownership or possessory interest in the property taken.

We disagree with an important aspect of Division One's construction of the robbery statute. In *State v. Molina*, the defendant was convicted of two robberies after he took money from one cash register in the presence of two employees. *State v. Molina*, 83 Wn. App. 144, 920 P.2d 1228 (1996). Division One reversed, stating, "[w]hen a robbery occurs in a commercial establishment, multiple counts are justified only where there is a separate taking from each employee." *Molina*, 83 Wn. App. at 146. In *State v. Johnson*, the defendant was convicted on two robbery counts because

he took videocassette recorders from a video store and accomplished the robbery by using force on the two store clerks. *State v. Johnson*, 48 Wn. App. 531, 740 P.2d 337 (1987). Once again, Division One reversed the convictions, stating, "[w]hile there were two clerks in the store, nothing was taken directly from the clerks. The only items stolen were items for which each clerk had equal responsibility with the other." *Johnson*, 48 Wn. App. at 535. Under our analysis, multiple robbery convictions were justified in *Johnson* and *Molina* because both employees were present and threatened with force, and both employees had a possessory interest or some representative capacity over the property taken by virtue of their employment.

*Latham* confirms our notion that a robbery defendant need not take property directly from a commercial establishment employee's person to commit robbery. In reversing the convictions obtained due to the passenger's presence, the *Latham* court stated,

> [h]ere, Thompson did not own the stolen car. He had no authority, express or implied, from Beniusis to act concerning the car, nor was the car in Thompson's possession when it was taken. Consequently, neither defendant could be convicted of robbing Thompson.

*Latham*, 35 Wn. App. at 866. This statement clearly implies that, had Thompson held some type of interest in the car, whether ownership, possessory, or some other representative capacity, he would have been a victim of robbery as was Beniusis, the owner.

That *Latham* did not involve a commercial establishment is a distinction without a difference. *Latham*'s rationale applies with equal force in the commercial context. The rationale commands that, so long as the employee is present under the threat of force when the forcible taking occurs, he is the victim of robbery and the taking in his presence constitutes a single unit of prosecution. Thus, where two employees are present and threatened when a forcible taking of the establishment's property occurs, the taking satisfies the unit of prosecution twice.

With the foregoing principles in mind, we turn to the events of September 23 and 25, 2000.

## II. Exxon Robberies

At the Exxon, Tvedt took the store's money, totaling $931.04, and the truck keys from Younce, the store's owner. As the takings occurred at knife point, they were sufficiently forcible.

The taking of the truck keys from Younce's person or presence is clearly a distinct unit of prosecution. Younce owned the keys; thus, even if the keys were not taken directly from Younce's person,[1]—i.e., from a desk drawer—so long as they were taken in his presence, Younce's ownership interest in the property taken is the basis for a distinct unit.

The money was taken in the presence of Schaefer, the cashier. As an employee, Schaefer stood in a representative capacity to the owner: she was charged with the care and custody of the store's money. Thus, although the money was not taken from Schaefer's person, her interest in the money was sufficient to serve as the basis for another distinct unit.

The facts support the two robbery convictions generated by Tvedt's acts at the Exxon station.

## III. Texaco Robberies

At the Texaco, Tvedt took the store's "weekend receipts," which totaled $7,550, and a cell phone from Shepherd, the store manager. CP at 26. Both takings occurred at knife point and were thus sufficiently forcible.

Our analysis mirrors that done of the Exxon robberies. Tvedt took Shepherd's cell phone by force from Shepherd's person or in his presence. This taking plainly constitutes a distinct unit. And Piper, the assistant manager, was in the same representative capacity to the owner of the money, her employer, as Schaefer was at the Exxon. As an employee, Piper was charged with the care and custody of the money taken. As the money was taken in her presence—the money

---

[1] The stipulated facts are not entirely clear on this point.

was in a bag next to the store's safe—the taking constitutes another distinct unit. Thus, the facts of the Texaco robbery support two convictions.

As the facts show that Tvedt's conduct, accompanied by the requisite ownership, possessory, or other representative interests in the property taken, supported conviction on counts VIII through XI, Tvedt was not subjected to double jeopardy.

Affirmed.

HUNT, C.J., concurs.

ARMSTRONG, J. (dissenting) — The majority finds two counts of robbery in each convenience store incident, holding that in the Exxon robbery Tvedt committed one robbery of the store's money from Schaefer and a separate robbery of truck keys from Younce. In reaching this conclusion, the majority treats the money-taking charge as if Schaefer were the only victim.[2] The problem is that the State charged Tvedt with committing one count of robbery by taking the money from Younce *and* Schaefer. And the State is bound by this charging decision. *See* WASH. CONST. art. I, § 22; *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991). Thus, the real question is whether the taking of keys from Younce during a taking of money from Younce and Schaefer is a separate robbery. I conclude that it is not and, therefore, dissent.

I agree with the majority's discussion of unit of prosecution. Here, the taking of money by threat of force from Younce and Schaefer, who both had a possessory interest in it, satisfies the unit of prosecution. But the taking of keys from Younce at the same time is not an additional robbery because Tvedt simply took more property from one of the same victims still under threat of force. And the State can

---

[2] This also implies that the taking of money from Younce and Schaefer is actually two robberies and leads the majority to take issue with Division One of this court, which has held that such a taking is one robbery. *See State v. Johnson*, 48 Wn. App. 531, 535-36, 740 P.2d 337 (1987); *State v. Molina*, 83 Wn. App. 144, 146-47, 920 P.2d 1228 (1996).

not create additional counts of robbery based on the kind or amount of property taken; the robbery unit of prosecution does not turn on the amount or kind of property taken from the victim. *See Cartier Drug Co. v. Md. Cas. Co. of Balt., Md.,* 181 Wash. 146, 149, 42 P.2d 37 (1935) (Robbery involves two distinct elements: (1) putting the victim in fear of violence; and (2) "the taking of money, property, or thing of value from his person or in his presence."); *State v. Collinsworth,* 90 Wn. App. 546, 551, 966 P.2d 905 (1997) (Robbery is the taking of property attended with circumstances likely to create an apprehension of danger.).

I would hold that Tvedt committed only one robbery at Exxon; by the same reasoning, I would hold that he committed only one robbery at Texaco.

Review granted at 150 Wn.2d 1009 (2003)