107 P.3d 728 (2005)
153 Wash.2d 705
STATE of Washington, Respondent,
v.
Ronald A. TVEDT, Petitioner.
No. 73944-7.
Supreme Court of Washington, En Banc.
Argued February 10, 2004.
Decided March 3, 2005.
*730 Pattie Mhoon, Tacoma, for Petitioner.
Kathleen Proctor, Pierce County Pros. Atty. Office, Tacoma, for Respondent.
MADSEN, J.
¶ 1 Petitioner Ronald Tvedt contends that his convictions on four counts of first degree robbery violate the state and federal constitutional proscriptions against double jeopardy. This challenge requires this court to decide what constitutes the unit of prosecution for robbery. We conclude that the unit of prosecution for robbery is each taking of personal property from a person or from his or her presence against the person's will through the use or threat of force, violence, or injury to a person or property, regardless of the number of items taken. A single taking can result in a conviction on one count of robbery, regardless of the number of persons present. Applying this definition of the unit of prosecution, Tvedt was properly convicted on four counts of robbery. Accordingly, we affirm the Court of Appeals' decision upholding the convictions, although our analysis differs significantly.

FACTS
¶ 2 Tvedt was charged with 12 counts of first degree robbery as a result of events occurring in September 2000. He pleaded guilty to counts I-VII and count XII. As to the remaining counts, counts VIII through XI, Tvedt "stipulate [ed] to facts sufficient for *731 a finding of guilty." Clerk's Papers at 24. He contends that his double jeopardy rights were violated by his convictions on these counts.
¶ 3 According to the stipulated facts, on the morning of September 23, 2000, Tvedt entered an Exxon service station in Pierce County where two people were present, owner Monty Younce and cashier Addie Schaefer. Schaefer was behind the counter and Younce was in the office. After Tvedt selected and brought an item to the counter, he quickly went behind the counter, pushed a knife blade into Schaefer's stomach, and then pushed her into the office. He forced Younce and Schaefer to lie face down on the floor. While brandishing the knife, Tvedt demanded money. Younce told Tvedt the only money on hand was in a deposit bag, which Tvedt stole. Tvedt then ordered Younce to give him the keys to Younce's truck, which Younce did. Tvedt left the station in the truck. The truck was later found abandoned nearby.
¶ 4 On the morning of September 25, 2000, Tvedt walked into a Texaco service station in Pierce County where store manager Jack Shepherd and assistant manager Teresa Piper were behind the counter. Shepherd was removing money from the safe. After selecting some food items, Tvedt suddenly drew a knife, went behind the counter, and stuck the knife into Shepherd's left side. He prodded Shepherd and Piper toward the back storage area, forced them to lie on the floor, and demanded the weekend receipts. After Piper told Tvedt the money was in a paper bag next to the safe, Tvedt stole the money and also stole Shepherd's cellular telephone. He then left the service station.
¶ 5 The State charged Tvedt with four counts of first degree armed robbery based on these events. In relevant part, count VIII charged Tvedt with taking the cash from or from the presence of Younce and Schaefer. Count IX charged Tvedt with robbery based on taking Younce's truck. Count X charged Tvedt with taking cash from or from the presence of Shepherd and Piper. Count XI charged Tvedt with robbery based on taking Shepherd's cellular telephone.
¶ 6 The trial court found Tvedt guilty on all four counts. At the sentencing hearing, Tvedt agreed that the State properly charged him with four counts of robbery but argued that only two deadly weapons enhancements were proper. The court rejected this argument, ruling that the State properly sought four weapons enhancements in connection with the Exxon and Texaco robberies.
¶ 7 Tvedt appealed, arguing for the first time that the four convictions on counts VIII-XI violated the double jeopardy prohibition.[1] The Court of Appeals affirmed the convictions in a split decision. State v. Tvedt, 116 Wash.App. 316, 65 P.3d 682 (2003). We granted discretionary review.

ANALYSIS
¶ 8 Tvedt claims that he should be convicted on only one count of robbery for his acts at each service station because he engaged in only one course of conduct at each. The State maintains that a conviction on one count of robbery is proper for each person whose will is overcome by the use or threatened use of force, i.e., each person placed in fear and from whom or from whose presence property is taken. Neither position reflects the legislature's definition of robbery.
¶ 9 The double jeopardy clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. 5. The Washington State Constitution provides that "[n]o person shall be ... twice put in jeopardy for the same offense." Const. art. I, § 9. The two clauses provide the same protection. In re Pers. Restraint of Davis, 142 Wash.2d 165, 171, 12 P.3d 603 (2000).
¶ 10 "Double jeopardy principles protect a defendant from being convicted more than once under the same statute if the defendant commits only one unit of the *732 crime." State v. Westling, 145 Wash.2d 607, 610, 40 P.3d 669 (2002) (citing State v. Adel, 136 Wash.2d 629, 634, 965 P.2d 1072 (1998)). Accordingly, in order to resolve whether double jeopardy principles are violated when a defendant is convicted of multiple violations of the same statute, a court must determine what "unit of prosecution" the legislature intends to be the punishable act under the statute. Westling, 145 Wash.2d at 610, 40 P.3d 669; In re Pers. Restraint of Davis, 142 Wash.2d at 172, 12 P.3d 603; State v. Tili, 139 Wash.2d 107, 113, 985 P.2d 365 (1999); Adel, 136 Wash.2d at 634, 965 P.2d 1072. The unit of prosecution for a crime may be an act or a course of conduct. United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 225-26, 73 S.Ct. 227, 97 L.Ed. 260 (1952); State v. Root, 141 Wash.2d 701, 710, 9 P.3d 214 (2000); Adel, 136 Wash.2d at 634, 965 P.2d 1072.
¶ 11 In determining legislative intent as to the unit of prosecution, we first look to the relevant statute. The meaning of a plain, unambiguous statute must be derived from the statutory language. Westling, 145 Wash.2d at 610, 40 P.3d 669; Tili, 139 Wash.2d at 115, 985 P.2d 365. However, "`[w]e are not allowed to look for an intent that reasonably could be imputed to [the legislature], nor are we permitted to construe [an] Act in a way that we believe will best accomplish evident statutory purpose.'" United States v. Keen, 96 F.3d 425, 433 (9th Cir.1996) (quoting Brown v. United States, 623 F.2d 54, 59 (9th Cir.1980)). Rather, as the Supreme Court has held,
when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication.
Universal C.I.T. Credit Corp., 344 U.S. at 221-22, 73 S.Ct. 227. Therefore, if the legislature fails to define the unit of prosecution or its intent is unclear, under the rule of lenity any ambiguity must be "`resolved against turning a single transaction into multiple offenses.'" Adel, 136 Wash.2d at 634, 965 P.2d 1072; (quoting Universal C.I.T. Credit Corp., 344 U.S. at 221-22, 73 S.Ct. 227); Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955).
¶ 12 RCW 9A.56.190 provides that "[a] person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone." Under the plain language of the statute, the crime of robbery requires that there be a taking of property and that the taking be forcible and against the will of the person from whom or from whose presence the property is taken. By describing the crime of robbery as it did, the legislature established an offense which is dual in nature  robbery is a property crime and a crime against the person.
¶ 13 There are several indications that the legislature intended that the unit of prosecution include both characteristics. Initially, the language of the statute clearly shows that the legislature was concerned with the offense as a property crime, as noted. Additionally, RCW 9A.56.190 requires a taking that must be accomplished "by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone." (Emphasis added.) The statute does not merely provide that the force must be directed at a person. It also provides that the use or threat of force, violence, or fear of injury may be directed to property.
¶ 14 Moreover, the legislature classified robbery with other property offenses. Laws of 1975, 1st Ex.Sess., ch. 260, at 841, 846 (§ 9A.56.200). Offenses included in the chapter, as codified in 1975, are theft, unlawful issuance of checks, taking motor vehicle without permission, theft of livestock, theft presumed from the failure to return leased items, extortion, possession of stolen property, obscuring the identity of a machine, and robbery. Laws of 1975, 1st Ex.Sess., ch. 260, §§ 9A.56.010-9A.56.210. The legislature classified robbery with property crimes, indicating *733 a focus on the nature of robbery offenses as crimes against property.[2]
¶ 15 But it is equally apparent that the legislature intended that the unit of prosecution for robbery encompass its character as a crime against the person. The plain language of RCW 9A.56.190 shows that the legislature was concerned with the risks that actual and threatened force, violence, and injury entail, and with the nature of the defendant's conduct in achieving a taking. A forcible taking must occur, against the will of the person from whom or from whose presence the property is taken. The legislature thus clearly also described a crime against persons as well as against property.
¶ 16 The language of RCW 9A.56.190 shows that the legislature's intent was to define the unit of prosecution in terms of a taking of personal property and in terms of an offense against the person from whom or in whose presence and against whose will the property is forcibly taken. The unit of prosecution need not be defined by only a single characteristic or element of a crime and the legislature has not done so. For example, in Westling we addressed the unit of prosecution for second degree arson damaging automobiles and other motor vehicles. We noted that RCW 9A.48.030(1) refers, in relevant part, to the causing of "a fire" that damages "any automobile." Westling. 145 Wash.2d at 611, 40 P.3d 669. Because" `[a]ny' means `every' and `all,'" we concluded that one conviction is appropriate where one fire damages one or more automobiles, i.e., by use of the word "any" the statute speaks in terms of "every" and "all" automobiles damaged by the one fire. Westling, 145 Wash.2d at 611-12, 40 P.3d 669 (quoting State v. Smith, 117 Wash.2d 263, 271, 814 P.2d 652 (1991)). Thus, both (1) the causing of "a" fire and (2) the damaging of property, whether one item or more than one, define the unit of prosecution. Westling, 145 Wash.2d at 611-12, 40 P.3d 669. Similarly, in Root, 141 Wash.2d 701, 9 P.3d 214, we held that the unit of prosecution for sexual exploitation of a minor under RCW 9.68A.040 is (1) each photo session (2) per minor involved in each session. Similar to the analyses in Westling and Root, we conclude that the unit of prosecution in this case entails more than a single characteristic of the offense.
¶ 17 In any event, even if we believed that the unit of prosecution must be identified by a single factor, we could not choose one or the other in this case, given the language of the statute and its placement in the criminal code. Thus, if it were necessary to identify one and only one aspect of a crime as the unit of prosecution, we would be compelled to apply the rule of lenity in favor of the defendant.
¶ 18 Further, we do not agree with Tvedt that the unit of prosecution for robbery is a course of conduct. By defining the offense in terms of a forcible taking of property from or from the presence of another, the legislature intended that one can be convicted of robbery for each forcible taking from a separate person. We implicitly recognized this intent when we sustained convictions on two counts of robbery in State v. Rupe, 101 Wash.2d 664, 693, 683 P.2d 571 (1984) on the ground that the defendant took cash from the tills of each of two tellers, each of whom was individually responsible for the money in her till and had control and possession of that money.
¶ 19 We also do not agree with Tvedt's assertion that the Court of Appeals defined the unit of prosecution to mean that multiple convictions for robbery may be sustained based on the number of items of property taken from or from the presence of one person  for example, three convictions of robbery if a watch, wallet, and ring are taken at the same time from the same person. Tvedt mischaracterizes the court's holding. The Court of Appeals properly rejected the *734 premise that the number of robberies can be based merely on the number of items taken. Tvedt, 116 Wash.App. at 321-22, 65 P.3d 682. The robbery statute does not support the premise that the number of items taken establishes the number of convictions that may be obtained.
¶ 20 Nor do we agree with the State's argument that the unit of prosecution is defined by the number of persons placed in fear. Nearly a century ago this court held that a conviction for robbery requires that the person from whom or in whose presence the property is taken have an ownership or representative interest in the property or have dominion and control over it. State v. Hall, 54 Wash. 142, 143-44, 102 P. 888 (1909). The court rejected the argument that a conviction could be upheld where "title was not alleged in the person robbed, nor is any connection shown or alleged between the person robbed and the property taken." Hall, 54 Wash. at 143, 102 P. 888. The robbery statute then in effect was in relevant part essentially the same as the present statute. Compare Code of 1881, § 829 with RCW 9A.56.190.[3] Thus, in order for a robbery to occur, the person from whom or from whose presence the property is taken must have an ownership, representative, or possessory interest in the property. Hall, 54 Wash. at 143-44, 102 P. 888; see also State v. Latham, 35 Wash.App. 862, 864-66, 670 P.2d 689 (1983); see, e.g., Rupe, 101 Wash.2d at 693, 683 P.2d 571.
¶ 21 Accordingly, the unit of prosecution for robbery is each separate forcible taking of property from or from the presence of a person having an ownership, representative, or possessory interest in the property, against that person's will.
¶ 22 We next turn to the Court of Appeals' conclusion that where a business's property is taken from or from the presence of multiple employees having joint control over the property, a conviction on a count of robbery may be sustained for each employee. In reaching this conclusion, Division Two of the Court of Appeals disagreed with Division One's constructions of the robbery statute in State v. Molina, 83 Wash.App. 144, 920 P.2d 1228 (1996) and State v. Johnson, 48 Wash.App. 531, 740 P.2d 337 (1987). In Molina, the court held that taking property from one cash register in the presence of two employees constituted only one robbery. In Johnson, the court held that only one robbery occurred where the defendant took property from the presence of two clerks in a store.
¶ 23 Initially, we note that the Court of Appeals upheld the convictions from the Exxon station robberies based on the taking of cash from the presence of an employee and the taking of the truck keys from the owner, and upheld the convictions from the Texaco station robberies based on the taking of cash from the presence of one employee and the taking of the cell phone from the other. However, Division Two of the Court of Appeals went out of its way in this case to expressly disagree with Division One's construction of the robbery statute, and we accordingly address the matter to avoid possible confusion resulting from the divergence of opinion.
¶ 24 It should be apparent, from our analysis of the unit of prosecution for robbery, that the analyses in Molina and Johnson best carries out the legislature's intent. The unit of prosecution is defined both by the taking of property and that the forcible taking be from or from the presence of a person against his or her will. If there is one taking of property, as the taking of the business's receipts from a single business safe or a single cash register, there can be a conviction for robbery on only one count, regardless of the number of employees present who have authority over the property, because there has been only one taking. If, however, there is more than one taking from more than one person, multiple convictions may result. For example, as explained, in Rupe we held that two convictions for robbery were proper where each teller had dominion and control over her separate till. And in State v. Turner, 31 Wash.App. 843, 846-47, 644 P.2d 1224 (1982), the court determined *735 that convictions for two robberies were proper where the defendant took separate items of property from separate persons at their home.[4] The court in Molina and Johnson correctly construed the robbery statute. Counts may not be multiplied based simply on the number of employees who have authority or control over the property who are present during the taking.[5]
¶ 25 Once the unit of prosecution is determined, a factual analysis is necessary to decide whether, under the facts of the case, more than one unit of prosecution is present. State v. Bobic, 140 Wash.2d 250, 266, 996 P.2d 610 (2000). Multiple convictions are proper only where the facts of the case support multiple units of prosecution committed. Id.
*736 ¶ 26 To determine whether four convictions on four counts of robbery are proper in this case, we must first address a second issue in this case  the effect of the charging document on the number of robbery convictions that can be upheld. The Court of Appeals requested supplemental briefing on this question. Although the Court of Appeals' majority opinion does not address the issue as a separate matter, the dissent concluded that convictions on four counts of robbery cannot be sustained because of the manner in which the State charged the offenses. Tvedt, 116 Wash.App. at 325, 65 P.3d 682 (Armstrong, J., dissenting). The dissent observed that the State charged Tvedt with taking the cash from both persons, collectively, at each service station, and also charged him with taking an item of personal property at each station from one of the individuals. Because a conviction for robbery does not turn on the number of items taken from a victim, and Tvedt "simply took more property from one of the same victims still under threat of force," the dissent reasoned, only one robbery occurred at each station. Tvedt, 116 Wash.App. at 325-26, 65 P.3d 682 (Armstrong, J., dissenting). Tvedt urges us to follow this analysis. We decline to do so.
¶ 27 An information must state all the essential statutory and nonstatutory elements of the crimes charged. U.S. Const., amend. 6; Const. art. I, § 22; CrR 2.1(a)(1); State v. McCarty, 140 Wash.2d 420, 424-25, 998 P.2d 296 (2000). However, surplus language in a charging document may be disregarded. See State v. Stritmatter, 102 Wash.2d 516, 523-24, 688 P.2d 499 (1984); State v. Worsham, 154 Wash. 575, 283 P. 167 (1929). That is, where unnecessary language is included in an information, the surplus language is not an element of the crime that must be proved unless it is repeated in the jury instructions. State v. Miller, 71 Wash.2d 143, 146, 426 P.2d 986 (1967); State v. Weiding, 60 Wash.App. 184, 187 n. 3, 803 P.2d 17 (1991); State v. Rivas, 49 Wash.App. 677, 682-83, 746 P.2d 312 (1987); State v. McGary, 37 Wash.App. 856, 859-60, 683 P.2d 1125 (1984). Nor is the information insufficient as a charging document if the defendant is not prejudiced by the inclusion of the unnecessary language. Stritmatter, 102 Wash.2d at 524, 688 P.2d 499; RCW 10.37.056.
¶ 28 Here, to charge robbery the State had to allege, among other things, that property was taken from or from the presence of a person having an ownership, representative, or possessory interest in the property. The State charged in count VIII that Tvedt took the business's cash from or from the presence of Younce and Schaefer, and in count X charged Tvedt with taking cash from or from the presence of Shepherd and Piper. However, the State did not need to name every person who was present and placed in fear where only a single taking of property occurred. Thus, although counts VIII and X each charge robbery based on taking the business's cash from or from the presence of two named persons, identifying the persons robbed as Schaefer and Piper was sufficient to state the elements of the offenses charged. The name of Younce in count VIII and the name of Shepherd in count X may be disregarded as surplusage. The information then charges Tvedt with one count of robbery for taking cash from or from the presence of Schaefer at the Exxon service station, one count for taking Younce's truck, one count for taking cash from or from the presence of Piper, and one count for taking Shepherd's cellular telephone. The case was tried on stipulated facts to the court and there were no jury instructions repeating the unnecessary allegations. Accordingly, this is not a case where the State had to prove the surplus facts included in the information and thus did not have to prove a robbery of each of the persons named in counts VIII and X or to prove a robbery of both collectively. See McGary, 37 Wash.App. at 860, 683 P.2d 1125. This is also not a case where the information is defective on the grounds of prejudice to the defendant resulting from the surplusage; Tvedt could not show prejudice given that he stipulated to the events that occurred.
¶ 29 Applying the appropriate unit of prosecution, Tvedt was properly charged with and convicted of four counts of robbery. At the Exxon station he forcibly took the cash from the presence of Schaefer, the cashier, *737 against her will. He also forcibly took the truck keys from or from the presence of Younce, the owner, against his will. At the Texaco station Tvedt forcibly took cash from the presence of Piper, the assistant manager, against her will, and forcibly took Shepherd's cell phone against his will.

CONCLUSION
¶ 30 The legislature has defined the crime of robbery as both a crime against property and a crime against the person. The unit of prosecution must encompass both a taking of property and a forcible taking against the will of the person from whom or from whose presence the property is taken. Accordingly, a conviction on one count of robbery may result from each separate taking of property from each person; however, multiple counts may not be based on multiple items of property taken from the same person at the same time, nor may multiple counts be based on a single taking of property from or from the presence of multiple persons even if each has an interest in the property.
¶ 31 We affirm Tvedt's four convictions for first degree robbery.
We concur: ALEXANDER, C.J., C. JOHNSON, SANDERS and FAIRHURST, JJ.
BRIDGE, J. (concurring).
¶ 32 I concur with the result the majority reaches in this case, affirming the Court of Appeals holding that Ronald Tvedt's double jeopardy rights were not violated when he was convicted of four counts of first degree robbery in connection with robberies of two commercial establishments where two employees were present at each location. I agree, based on State v. Rupe, 101 Wash.2d 664, 693, 683 P.2d 571 (1984), that the State properly charged Tvedt with four counts of robbery for (1) the taking of the Exxon station's cash from Addie Schaefer, (2) the taking of Monty Younce's truck keys, (3) the taking of the Texaco station's cash form Teresa Piper, and (4) the taking of Jack Shepherd's cell phone. See majority at 16. However, I write separately because I believe that the proper unit of prosecution for robbery, as defined by our legislature, permits a separate count for each victim against whom a defendant uses or threatens force to accomplish the taking of property against the victim's will, from the victim's person, or in his or her presence, provided that the victim has an ownership, representative, or possessory interest in the property taken.

I

Unit of Prosecution for Robbery
¶ 33 The majority concludes that the legislature intended the unit of prosecution to "encompass both a taking of property and a forcible taking against the will of the person from whom or from whose presence the property is taken," yet it further sets forth its conclusion that multiple counts may not be based on "a single taking of property from or from the presence of multiple persons even if each has an interest in the property." Majority at 16 (emphasis added). It is this secondary assertion with which I disagree.
¶ 34 When defendants challenge multiple convictions for violations of a single statute the question to be asked "is what `unit of prosecution' has the Legislature intended as the punishable act under the specific criminal statute." State v. Adel, 136 Wash.2d 629, 634, 965 P.2d 1072 (1998) (citing Bell v. United States, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955)). To determine the unit of prosecution, we look to the plain language of the statute. State v. Tili, 139 Wash.2d 107, 113, 985 P.2d 365 (1999) (citing Adel, 136 Wash.2d at 635, 965 P.2d 1072). The Washington criminal code sets forth the definition of robbery:
A person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking; in either of which cases the degree of force is immaterial. Such taking constitutes robbery whenever it appears that, although *738 the taking was fully completed without the knowledge of the person from whom taken, such knowledge was prevented by the use of force or fear.
RCW 9A.56.190. RCW 9A.56.200 and .210 then go on to define first and second degree robbery respectively.
¶ 35 As the majority notes, RCW 9A.56.190 establishes the crime of robbery as one which is dual in nature. See majority at 732. That is, the statute criminalizes a robber's taking of property and a robber's use of force against persons. See 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW § 8.11, at 437 & n. 3 (1986) (noting that robbery is an offense against both persons and property, however with the "modern trend ... to consider [it] as an offense against the person").
¶ 36 Contrary to the majority's conclusion however, RCW 9A.56.190's plain language evidences that the legislature principally intended to criminalize the robber's use or threatened use of force against individuals.[1]See LAFAVE & SCOTT, supra, at 437 n. 3; see also 77 C.J.S. Robbery § 2 (1994) ("While [robbery] can be characterized as an offense against both person and property, robbery is held to be primarily an offense against the person."). Our legislature unambiguously set forth this intent through its definition of robbery in our criminal code.
¶ 37 First, the statutory composition of our robbery statutes evinces the legislature's codification of this crime as one committed against a person. Notably, RCW 9A.56.190, RCW 9A.56.200 (first degree robbery), and RCW 9A.56.210 (second degree robbery) ignore the type, value, and number of items taken by the robber. Rather, the principal differences between first and second degree robbery are the type of weapon, if any, employed by the robber and whether the robber inflicts bodily injury on his victim. RCW 9A.56.200, .210. This clearly demonstrates the legislature's intent to punish robbers who inflict greater injury and/or pose additional physical threats to victims by brandishing a deadly weapon rather than to punish based on the number and/or value of the items taken by the robber.[2] Nor did the legislature adopt a hybrid analysis, taking into consideration both the type and degree of force used and the value of the property taken. Rather, it was solely concerned with the degree of injury and/or threat of physical violence against the person.[3]See RCW 9A.56.190-.210.
¶ 38 Second, the legislature's use of the phrase, "the person of another or in his presence" in RCW 9A.56.190 provides further indication of its predominant intent to protect individuals from robbers' use of violence. By stating "the person of another or in his presence," the legislature refers to victims "in the singular." See People v. Borghesi, 66 P.3d 93, 98 (Colo.2003). This signals with precision the legislature's intent to permit the State to charge robbers with a separate count of robbery for each individual victim against whom a robber uses or threatens force. Other jurisdictions have held similarly. See, e.g., Commonwealth v. Rozplochi, 385 Pa.Super. 357, 364, 561 A.2d 25 (1989) (defendant could be convicted of two robberies for threatening two people *739 during a single theft because the state statute "was written with regard to an individual person being placed in danger ... and that a separate offense is committed for each individual person placed in such danger"); see also Jordan v. Commonwealth, 2 Va.App. 590, 595, 347 S.E.2d 152 (1986) ("The statute refers to the victim in the singular and suggests that the General Assembly's primary purpose was the protection of an individual from violence and fear of harm during a robbery."). We should likewise recognize this clear indication of legislative intent. See State v. Westling, 145 Wash.2d 607, 610, 40 P.3d 669 (2002) ("The meaning of a plain, unambiguous statute must be derived from the language in the statute.").
¶ 39 Here, the plain language in RCW 9A.56.190 unambiguously declares the legislature's intent to permit the State to charge a count of robbery for each victim against whom a defendant uses or threatens force to accomplish the taking of personal property against the victim's will from the victim's person or in his presence.[4] Further, as we have previously held, the "taking of personal property" under the robbery statute is satisfied when (1) the stolen property was under the victim's possession and control, (2) the victim acts in a representative capacity over the property, or (3) the victim has an ownership interest in the property. Rupe, 101 Wash.2d at 693, 683 P.2d 571; State v. Latham, 35 Wash.App. 862, 865, 670 P.2d 689 (1983) ("The deprivation of any ownership interest, including an undivided share, in the property taken, will support a robbery conviction. Also, `[a] taking from one having the care, custody, control, management, or possession of the property is sufficient.'" (citation omitted) (quoting 67 AM.JUR.2D Robbery § 14, at 38-39 (1973))). I would thus hold here, in accord with the numerous other jurisdictions that have similarly held,[5] that in *740 the event a defendant takes property by the use of or threat of force from the person or presence of multiple victims against their will, and the victims enjoy a joint ownership, representative, or possessory interest in the stolen property, a defendant may be convicted of counts of robbery equal to the number of victims.
¶ 40 A careful examination of the facts of this case reveals the correctness of this interpretation. Recounting the facts as set forth by the majority: "on the morning of September 23, 2000, Tvedt entered an Exxon service station in Pierce County where two people were present, owner Monty Younce and cashier Addie Schaefer.... [Tvedt] quickly went behind the counter [and] pushed a knife blade into Schaefer's stomach." Majority at 730-731 (emphasis added). Tvedt then "forced Younce and Schaefer to lie face down on the floor [and][w]hile brandishing the knife, Tvedt demanded money." See id. (emphasis added). Younce, under threat of the knife, instructed him where it was located. Id. Both Younce and Schaefer possessed an ownership, representative, or possessory interest in the property taken. It is clear that both Younce and Schaefer were individually victims of Tvedt's robbery.
¶ 41 Next, two days later, Tvedt walked into a Texaco service station "where store manager Jack Shepherd and assistant manager Teresa Piper were behind the counter." Majority at 730-731. "Tvedt suddenly drew a knife ... and stuck the knife into Shepherd's left side." Id. at 731 (emphasis added). He then prodded both"Shepherd and Piper toward the back storage area, forced them to lie on the floor, and demanded the weekend receipts" and Piper, under duress, told Tvedt where the money was located. Id. Both Shepherd and Piper possessed an ownership, representative, or possessory interest in the property taken. Again, both Shepherd and Piper were individually victims of Tvedt's robbery.
¶ 42 The majority's reasoning ignores the common understanding that things get stolen while people get robbed. Younce, Schaefer, Shepherd, and Piper were all victimized by Tvedt when he "unlawfully [took] personal property" from their person or in their presence, over which they had an ownership, representative, or possessory interest, "against [their] will by the use or threatened use of immediate force, violence, or fear of injury to that person."[6] RCW 9A.56.190 (emphasis added). The majority's interpretation erroneously circumscribes the legislature's intent behind the robbery statute in the context of multiple victims and business establishments. The majority seemingly posits that the Texaco and Exxon stations were robbed, not the employees whom worked there and were placed in fear of their lives. I do not agree that this is the crime the legislature defined nor intended, and I *741 thus cannot concur with the majority's resolution of this issue.

II

Flaws in Majority's Analysis
¶ 43 The majority bases its conclusion regarding the proper unit of prosecution, in part, on the placement of robbery in our current criminal code, the rationale employed by Division One in prior factually analogous cases, and finally a policy rationale based on the potential ramifications for criminal defendants convicted under the unit of prosecution proffered by Division Two below. I address each in turn.
¶ 44 Placement of Robbery in Criminal Code: In support of its conclusion, the majority finds that the legislature's classification of robbery in the chapter entitled "Theft and Robbery," suggests that the legislature has "indicat[ed] a focus on the nature of robbery offenses as crimes against property." Majority at 732-733. This placement is not compelling evidence of the legislature's intent. First, by our jurisprudence, the chapter title does not express legislative intent and, with respect to the crime of robbery, the legislature clearly indicated the same in the 1975 revisions to the criminal code. See LAWS OF 1975, 1st Ex.Sess., ch. 260, § 9A.04.010 ("Chapter, section, and subsection captions are for organizational purposes only and shall not be construed as part of this title."), codified at RCW 9A.04.010(5). Second, the majority itself notes that our legislature's definition of the crime of robbery has not been meaningfully amended since at least as far back as 1881. See majority at 734 (comparing CODE OF 1881, § 829 with RCW 9A.56.190). Moreover, it is insightful to compare today's definition with that enacted by the legislature in 1909, which set forth:
Robbery is the unlawful taking of personal property from the person of another, or in his presence, against his will, by means of force or violence or fear of injury, immediate or future, to his person or property, or the person or property of a member of his family, or of anyone in his company at the time of the robbery. Such force or fear must be used to obtain or retain possession of the property, or to prevent or overcome resistance to the taking....
Former RCW 9.75.010 (LAWS OF 1909, ch. 249, § 166). Wordsmithing aside, the legislature's 1909 definition was exactly the same as that which exists today. Compare RCW 9A.56.190. Unlike the 1975 revisions, in 1909 our legislature further indicated, in the session law, specific categorical groupings under which it classified crimes. Unlike ordinary "Larceny" (LAWS OF 1909, ch. 249, § 349, at 997), which was set out under the chapter heading "Crimes Against Property. Crimes Against State Property." (id. at 986), the legislature purposefully placed "Robbery" (id. § 166, at 938) under the chapter heading "Crimes Against the Person. Suicide." (id. at 929), adjacent to "Assault" and "Duels." Id. §§ 161-65, 167-70. As the legislature has not meaningfully amended its definition of robbery since 1909, there is no reason to infer that it no longer thinks of the crime as one primarily "against the person."
¶ 45 The majority further contends that this court's decisions in In re Personal Restraint of Percer, 150 Wash.2d 41, 51-52, 75 P.3d 488 (2003) and State v. Calle, 125 Wash.2d 769, 780, 888 P.2d 155 (1995) support the proposition that this court has looked to the legislature's placement of an offense within the criminal codes as evidence of the legislature's intent. See majority at 733 n. 2. This claim is not persuasive in the context of the present issue before the court. Both Percer and Calle concerned whether two different statutory crimes were the "same offense." See Percer, 150 Wash.2d at 48-49, 75 P.3d 488 (second degree felony murder and vehicular homicide); Calle, 125 Wash.2d at 778, 888 P.2d 155 (first degree incest and second degree rape). Consequently, it was logical to rely on the legislature's placement of the two crimes in the criminal code to determine whether the legislature intended to authorize multiple punishments for those offenses. Percer and Calle are not instructive in the context of a single crime.
¶ 46 Division One's Analysis in Molina and Johnson: The majority concludes that Division One's analysis in State v. Molina, 83 *742 Wash.App. 144, 920 P.2d 1228 (1996) and State v. Johnson, 48 Wash.App. 531, 740 P.2d 337 (1987) "best carries out the legislature's intent" and is instructive in this context. Majority at 734. I disagree. Division One did not examine RCW 9A.56.190 to determine the legislature's intended unit of prosecution for robbery in either Molina or Johnson. Rather, it applied the then-accepted "same evidence" test to reach its conclusions. Molina, 83 Wash.App. at 146-47, 920 P.2d 1228; Johnson, 48 Wash.App. at 535, 740 P.2d 337. Because this court has since adopted the "unit of prosecution" analysis for cases where a defendant claims his double jeopardy rights were violated when the State charges him with several violations of a single statute, Division One's rationale seems no longer viable. Contrary to Division One's analysis, this court has rejected use of the "same evidence test" in this context and established that the "proper inquiry ... is what `unit of prosecution' has the Legislature intended as the punishable act under the specific criminal statute." Adel, 136 Wash.2d at 634, 965 P.2d 1072 (emphasis added).
¶ 47 Resulting Effect of Unit of Prosecution: Finally, the majority claims that the unit of prosecution approved of by Division Two here, which I would affirm, would lead to "`incongruous results.'" Majority at 735 n. 4 (quoting Ladner v. United States, 358 U.S. 169, 177, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958)). The majority reasons that a "considerable disparity" would exist in instances where a defendant orders five employees in a restaurant to lie on the floor at gunpoint while he takes money from a register under the joint control of all five employees, in comparison to cases where a defendant enters a restaurant with only one employee present and takes money from the same register. Id. The majority mistakenly and with apparent disregard of the victims of robbery crimes, concludes that "[t]here is no difference in the defendant's conduct," id, choosing to ignore the fact that the defendant in the first scenario has, by his intentional act, chosen to place five people in fear of their lives.[7] It is not "incongruous" to punish this defendant more harshly where he intended to place the lives of a greater number of employees in jeopardy in order to take the cash from a register for which they were all jointly responsible.

III
¶ 48 Accordingly, I would hold that in the event a defendant takes property by the use of or threat of force from the person or presence of multiple victims against their will, and the victims enjoy a joint ownership, representative, or possessory interest in the stolen property, a defendant may be convicted of counts of robbery equal to the number of victims. I believe this is the unit of prosecution the legislature intended in enacting RCW 9A.56.190-.210. I would thus affirm the Court of Appeals conclusion that Tvedt could be convicted of four counts of robbery in connection with his robberies of two commercial establishments each with two employees who both enjoyed a representative interest in the cash taken by Tvedt. See State v. Tvedt, 116 Wash.App. 316, 323-24, 65 P.3d 682 (2003).
OWENS, CHAMBERS, JJ., and IRELAND, J.P.T., concur.
NOTES
[1] A defendant may raise for the first time on appeal a claim that his double jeopardy rights were violated. State v. Adel, 136 Wash.2d 629, 631-32, 965 P.2d 1072 (1998). There is no allegation here that Tvedt waived his double jeopardy rights.
[2] Since 1975 additional property crimes have been added. See RCW 9A.56.230-.310. Importantly, the legislature, not the code reviser, placed robbery in chapter 9A.56 RCW. See Laws of 1975, 1st Ex.Sess., ch. 260, at 841, 846. The legislature's placement of an offense within the criminal code is evidence of legislative intent. See In re Pers. Restraint of Percer, 150 Wash.2d 41, 51-52, 75 P.3d 488 (2003) (when determining legislative intent as to whether two offenses were the same for double jeopardy purposes, the court looked to the location of the offenses in the criminal code); State v. Calle, 125 Wash.2d 769, 780, 888 P.2d 155 (1995) (same).
[3] The Code of 1881, § 829 provided: "Every person who shall forcibly and feloniously take from the person of another, or from his immediate presence, any article of value by violence or putting in fear, shall be deemed guilty of robbery."
[4] We also note that under the Court of Appeals' analysis, sentences for multiple convictions of robbery could result that are disproportionate to the conduct committed. In Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed.2d 199 (1958), the United States Supreme Court reversed one of two convictions for assault on a federal officer where the defendant fired a shotgun and injured two officers. The Government had argued that there were as many assaults as there were officers affected. The Court observed that under the statute

[p]unishments totally disproportionate to the act of assault could be imposed [under that theory] because it will often be the case that the number of officers affected will have little bearing upon the seriousness of the criminal act. For an assault is ordinarily held to be committed merely by putting another in apprehension of harm whether or not the actor actually intends to inflict or is capable of inflicting that harm. Thus, under the meaning for which the Government contends, one who shoots and seriously wounds an officer would commit one offense punishable by 10 years' imprisonment, but if he points a gun at five officers, putting all of them in apprehension of harm, he would commit five offenses punishable by 50 years' imprisonment, even though he does not fire the gun and no officer actually suffers injury.
Ladner, 358 U.S. at 177, 79 S.Ct. 209. The Court did not find congressional intent for this result in the materials before it.
Similar "incongruous results," Ladner, 358 U.S. at 177, 79 S.Ct. 209, could result under the Court of Appeals' analysis. If a defendant with no prior offenses enters a restaurant after hours, orders five employees to lie on the floor at gunpoint and takes only money from a single cash register over which all of the employees share control, he could be convicted on five counts of robbery in the first degree. See RCW 9A.56.200. His standard range sentence for each offense would be 108-144 months or 9 to 12 years. RCW 9.94A.510; RCW 9.94A.525. (Absent aggravators, the sentences would run concurrently. RCW 9.94A.589(1). No firearm enhancements are included in these examples.) If, however, several employees have already gone home and only one employee remains who is forced at gunpoint to lie on the floor, the defendant could be convicted on only one count of first degree robbery. The defendant's standard range sentence would be 31-41 months. RCW 9.94A.510;.525. There is no difference in the defendant's conduct, using a firearm to force employees to lie on the floor, and no difference in the taking or the intent to take the money belonging to the restaurant. There is a considerable disparity, however, in the standard range sentences, based only on the number of employees who happen to be present. Given the significantly harsher result based upon the number of persons present, there must be clear indications of legislative intent for such a result, and there are none.
The dissent maintains that a defendant who places a greater number of employees in fear of their lives would be insufficiently punished under the unit of prosecution we recognize. At 736. Nothing in our decision forecloses the State from charging other appropriate crimes, such as assault.
[5] We recognize, as the State points out, that there is a split of authority from other states regarding whether multiple robbery convictions may be upheld where a business's property is taken from the presence of more than one employee, each of whom has authority over, or dominion and control of, the property. Some courts conclude that robbery is primarily a crime against persons, and multiple convictions may result where more than one employee is present when the taking occurs. E.g., People v. Borghesi, 66 P.3d 93 (Colo.2003) (convictions on two counts of robbery upheld where cash was taken from two store clerks at a single cash register; a robber may be convicted of more than one count of robbery for a single taking of property from more than one person). Other courts conclude that although the crime involves a forcible taking, one taking will result in only one conviction, regardless of the number of employees present. E.g., Wheat v. State, 297 Ark. 502, 503 763 S.W.2d 79 (1989) (the defendant, while armed with a pistol, forced two clerks to lie on the floor while the pharmacist gathered property of the pharmacy; the court noted that while the focus of aggravated robbery is the threat of physical harm to the victim, only one robbery conviction can result where the defendant did not take or intend to take property individually from each person); State v. Faatea, 65 Haw. 156, 648 P.2d 197 (1982) (five employees ordered at gunpoint to lie on the floor and threatened with having their heads "blown off" while defendant and another took hotel's money; four of defendant's five convictions for robbery reversed).
[1] See Model Penal Code § 222.1 (Official Draft & Explanatory Notes 1985) ("Robbery is distinguished from ordinary larceny by the presence of the victim and the use or threat of violence; it is distinguished from extortion by the immediacy and seriousness of the threat."); 67 Am.Jur.2d Robbery § 21, at 67 (2003) ("To establish robbery, a taking must be by means of force or violence, or intimidation by assault or putting in fear."). See also 2 LaFave & Scott, supra, § 8.11 n. 3 ("The modern trend is to consider robbery as an offense against the person rather than against property."); see also generally Laws of 1909, ch. 249 (evidencing legislature's efforts to categorize robbery as a crime against the person as compared with larceny as a crime against property).
[2] Compare RCW 9A.56.030-.050 (degrees of theft differentiated by the type and value of items taken). Additionally, the mere taking of property from the person of another, e.g., pick-pocketing, is also defined as theft in the first degree. RCW 9A.56.030(1)(b).
[3] See Commonwealth v. Levia, 385 Mass. 345, 348, 431 N.E.2d 928 (1982) ("the Legislature has not imposed different statutory penalties for robbery according to the value of the property taken, as it has with respect to the crime of larceny (see G.L. [General Laws] c. 266, § 30), thus suggesting that it was not so much concerned with the larceny aspect of the crime of robbery as with its assault aspect").
[4] As the legislature enacted a critical limitation, the breadth of this unit of prosecution is neither as broad as the State suggests nor as Tvedt fears. See State's Ct. of Appeals Br. at 12-13; Pet. for Review at 13-14. The legislature required that a robber's use of force be used to accomplish the "tak[ing of] personal property from the person of another or in his presence against his will." RCW 9A.56.190 (emphasis added). The State is not permitted to charge robbery simply in relation to the number of individuals present "whose will was overcome by the robber's use or threatened use of force." See State's Ct. of Appeals Br. at 12-13. Thus the proper unit of prosecution does not include counts pertaining simply to bystanders who are nevertheless placed in fear by the robber's actions. Rather, a robber's use or threatened use of force against an individual must be coupled with the taking of that individual's property, including property over which he has an ownership, representative, or possessory interest, from that individual or in his presence against his will. See RCW 9A.56.190; see also Rupe, 101 Wash.2d at 693, 683 P.2d 571.
[5] See Borghesi, 66 P.3d at 103 ("Because the common property taken from the second clerk was also taken from the presence of another  the first clerk  the robber's acts constitute different offenses as to each victim."); Facon v. State, 144 Md.App. 1, 44, 796 A.2d 101 (2002) (holding that it did not violate the defendant's double jeopardy rights to charge him with two counts of robbery when he used force against two convenience store employees to obtain store property in the joint control of those employees), rev'd on other grounds, 375 Md. 435, 825 A.2d 1096 (2003); Towner v. State, 812 So.2d 1109, 1114 (Miss.Ct.App.2002) ("Taking one item of property owned by two people is one larceny. Robbing two people of one item of property at gunpoint while the property is within their proximity and control, even if neither of them owns it, may be two robberies. This is because larceny is a crime against property while robbery is a crime against persons. Thus the number of persons does not matter in one but does in the other."); People v. Rodgers, 248 Mich.App. 702, 712, 645 N.W.2d 294 (2001) (In the context of an armed robbery of a muffler shop staffed by three employees, the court determined that "[w]hen a defendant assaults and robs two or more persons during a single incident, he may be charged with and convicted of more than one armed robbery."), appeal denied, 467 Mich. 852, 650 N.W.2d 338 (2002); State v. Jones, 344 S.C. 48, 55, 543 S.E.2d 541 (2001) ("we hold that, where there is a threat of bodily injury to each person from whom property is stolen, the defendant may be charged with separate offenses"); Ex Parte Hawkins, 6 S.W.3d 554, 560-61 (Tex.Crim.App.1999) (determining robbery to be a form of assault and thus defining the allowable unit of prosecution for robbery to be defined by the number of victims); Sullivan v. Commonwealth, 16 Va.App. 844, 848, 433 S.E.2d 508 (1993) (holding that defendant's double jeopardy rights were not violated when the Commonwealth charged him with two counts of robbery for using force against two store employees to obtain store property under their joint control); Rozplochi, 385 Pa.Super. at 364-66, 561 A.2d 25 (based on the finding that victims in the robbery statute are defined in the singular, holds that the Pennsylvania legislature "intended to permit separate punishments for threatening more than one person"); People v. Ramos, 30 Cal.3d 553, 589, 180 Cal.Rptr. 266, 639 P.2d 908 (1982) ("We view the central element of the crime of robbery as the force or fear applied to the individual victim in order to deprive him of his property. Accordingly, if force or fear is applied to two victims in joint possession of property, two convictions of robbery are proper."), rev'd on other grounds, 463 U.S. 992, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983).

While the majority correctly notes the existence of a split of authority amongst the states on this issue, I find the rationale and reasoning of the above cases more persuasive and consistent with our state's current and historic definitions of robbery. Compare, e.g., Wheat v. State, 297 Ark. 502, 503, 763 S.W.2d 79 (1989) (concluding that when defendant threatened three employees at gunpoint demanding pharmacy's cash that "the robbery was a single transaction, the intention of which was to commit theft of the pharmacy property and not three separate offenses") (emphasis added); State v. Faatea, 65 Haw. 156, 156-57, 648 P.2d 197 (1982) (finding robbery to be "merely an aggravated form of theft" and thus although five employees were threatened at gunpoint, only one charge of robbery was appropriate when defendant stole cash belonging to business).
[6] Commentators have shed light on the nature of robbery, and reveal its nature as primarily a crime against the person:

The violent petty thief operating in the streets and alleys of big cities  the "mugger"  is one of the main sources of insecurity and concern in the population at large. There is a special element of terror in this kind of depredation. The ordinary citizen does not feel particularly threatened by surreptitious larceny, embezzlement, or fraud. But there is understandable abhorrence of the robber who accosts on the streets and who menaces his victims with actual or threatened violence against which there is a general sense of helplessness.
2 MODEL PENAL CODE & COMMENTARIES § 222.1 cmt. at 98 (Official Draft & Rev. Comments 1980).
[7] As the Pennsylvania Supreme Court aptly noted: "An offender whose unlawful act harms or is likely to harm many people is more culpable, and thus deserving of more severe punishment, than an offender whose unlawful act harms only one person." Rozplochi, 385 Pa.Super. at 365, 561 A.2d 25.