[No. 75866-2.    En Banc.]
Argued May 24, 2005.    Decided July 20, 2006.

THE STATE OF WASHINGTON, *Respondent*, v. STEVEN EDWARD
LEYDA, *Petitioner*.

*Eric J. Nielsen* (of *Nielsen, Broman & Koch, P.L.L.C.*), for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Brian M. McDonald, Deputy*, for respondent.

¶1 ALEXANDER, C.J. — Steven Leyda was convicted of four counts of second degree identity theft, one count of second degree theft, two counts of third degree theft, and one count of second degree possession of stolen property. The Court of Appeals affirmed all eight convictions. On appeal here, Leyda claims that his multiple second degree identity theft convictions under RCW 9.35.020 violate constitutional prohibitions against double jeopardy because he committed only one offense when he unlawfully obtained another person's credit card and subsequently used it four times. He contends, additionally, that the charging document was constitutionally deficient because it did not include an essential element of second degree identity theft and third degree theft—namely, the value of the items unlawfully obtained.

¶2 We agree with the Court of Appeals that value is not an essential element of either second degree identity theft or third degree theft. We determine, however, that the Court of Appeals employed the wrong unit of prosecution when it held that each *use* of a victim's means of identification or financial information constitutes a separate punishable act under RCW 9.35.020. We conclude that the unit

of prosecution for identity theft is any one act of either knowingly "obtain[ing], possess[ing], us[ing], or transfer-[ring] a means of identification or financial information of another person . . . with the intent to commit, or to aid or abet, any crime." RCW 9.35.020(1). Applying this unit of prosecution to the facts of this case, we hold that Leyda's single course of proscribed criminal conduct should not have been divided into multiple offenses by the State and that doing so violated double jeopardy principles. Thus, we reverse three of the four second degree identity theft convictions and remand for resentencing. We, however, affirm both third degree theft convictions.

I

¶3 On October 21, 2002, Leyda and his girl friend, Nikkoleen Cooley, visited the Bon Marché store at the SeaTac Mall. At that time, Leyda had in his possession a Bon Marché credit card belonging to Cynthia Austin. Leyda gave Austin's card to Cooley, who used it at the store to purchase several items. Austin testified at trial that she was not acquainted with Leyda and had not given him or Cooley permission to use her credit card.

¶4 Five days after their October 21, 2002, visit to the SeaTac Bon Marché, Leyda and Cooley returned to that store. Using Austin's card, Cooley purchased a watch at the jewelry department. A few minutes later, Leyda and Cooley jointly used Austin's card to purchase items in another department of the Bon Marché.

¶5 On November 2, Leyda and Cooley again returned to the SeaTac Bon Marché. On this occasion, Cooley presented Austin's credit card to a cashier who, suspecting that the card was stolen, called the Bon Marché's Loss Prevention Department to verify the card's use. The cashier also asked Cooley for her address, Social Security number, and identification. Cooley responded that she needed to go to a car to get identification. Leyda and Cooley then exited the store with Austin's card.

¶6 While the cashier was questioning Cooley, a loss prevention employee at the Bon Marché telephoned Cynthia Austin. Austin informed the employee that she had not provided her credit card to anyone. Although the loss prevention employee subsequently tried to stop Cooley and Leyda from entering their car, Leyda was able to drive away. As Leyda did so, he threw Austin's credit card out the window. Federal Way police officers stopped the car a short time later and arrested Leyda and Cooley.

¶7 Leyda was charged in King County Superior Court with a separate count of identity theft for each of the four uses or attempted uses of Austin's credit card. He was charged, additionally, with two counts of third degree theft and one count of second degree theft based upon the three purchases that were made with Austin's card. Only the second degree theft charge specified the value of the property unlawfully obtained. Leyda was also charged with possession of stolen property based upon his possession of Austin's credit card.[1] Cooley pleaded guilty to possession of stolen property in the third degree, a gross misdemeanor. Leyda went to trial, and a jury found him guilty on all counts. The Court of Appeals affirmed all of Leyda's convictions. *State v. Leyda*, 122 Wn. App. 633, 94 P.3d 397 (2004). Leyda then petitioned this court for direct review and we granted his petition at 153 Wn.2d 1023 (2005).

¶8 Leyda challenges his four identity theft convictions here, arguing that the unit of prosecution was the act of obtaining the identity information rather than its subsequent use. Leyda also challenges his second degree identity theft and third degree theft convictions on a separate ground, contending that the charging document was consti-

---

[1] Each count in the information charged that Leyda committed the crimes "together with another." Clerk's Papers at 6-9. "Criminal liability applies equally to a principal and an accomplice because they share equal responsibility for the substantive offense." *State v. Trout*, 125 Wn. App. 403, 409, 105 P.3d 69 (2005) (citing *State v. Rodriguez*, 78 Wn. App. 769, 772-73, 898 P.2d 871 (1995)).

tutionally deficient because it did not list the value of the items unlawfully obtained.[2]

## II

■ ¶9 Pending review here, the State moved to strike issues three and four from Leyda's supplemental brief. In those portions of his brief, Leyda argued for the first time to this court that the second degree identity theft and second degree possession of stolen property charges should have merged and that the "to-convict" jury instructions relating to the third degree theft and second degree identity theft charges were constitutionally deficient.[3] *See* Suppl. Br. of Pet'r at 16-19. The State correctly observes that Leyda sought review *only* of the unit of prosecution and the sufficiency of the charging information issues. *See* Resp't's Mot. to Strike at 2. Leyda has not presented any substantive argument in response to the State's motion. This court will generally not consider issues raised for the first time in a supplemental brief filed after review has been accepted. *Douglas v. Freeman*, 117 Wn.2d 242, 258, 814 P.2d 1160 (1991); RAP 13.7(b). We are inclined to follow the general rule and grant the motion to strike. We, therefore, address only the issues Leyda raised in his petition for review.

## III

¶10 Leyda claims that the information violated both the federal and Washington State Constitutions[4] because it did not include all essential elements of the charges of second

---

[2] Leyda has not challenged his second degree theft conviction at this court.

[3] These challenges were considered and rejected by the Court of Appeals. *See Leyda*, 122 Wn. App. at 639-40.

[4] Amendment VI of the United States Constitution provides, "In all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the accusation." Article I, section 22 of the Washington Constitution provides, "In criminal prosecutions the accused shall have the right to . . . demand the nature and cause of the accusation."

degree identity theft and third degree theft.[5] *See* Pet. for Review at 15-19. Specifically, he argues that the value of the goods, services, credit, etc., obtained through the theft is an essential element of the crimes and, therefore, should have been set forth in the information. The Court of Appeals rejected this argument, holding that the reference to value in each of the challenged statutory provisions establishes "a ceiling above which the offense is elevated to a higher degree, not a floor that must exist to support the charge or conviction." *Leyda*, 122 Wn. App. at 640.

¶11 We recently addressed this issue insofar as it related to a charge of third degree theft. In *State v. Tinker*, 155 Wn.2d 219, 222, 118 P.3d 885 (2005), we held that value is not an essential element of third degree theft, reasoning that value is only an essential element of the first and second degree theft statutes because these charging statutes explicitly state a *"minimum* value threshold." We are not inclined to depart from the holding we reached in that case and affirm Leyda's third degree theft convictions.

¶12 Turning to the challenges made to the identity theft charges, we hold that value is not an essential element of second degree identity theft and need not be alleged in the charging document. An "essential element is one whose specification is necessary to establish the very illegality of the behavior." *State v. Johnson*, 119 Wn.2d 143, 147, 829 P.2d 1078 (1992) (citing *United States v. Cina*, 699 F.2d 853, 859 (7th Cir. 1983)). Applying the analysis we set forth in *Tinker*, we conclude that value cannot be an essential element of second degree identity theft given that the statute provides that the crime occurs even "when no credit, money, goods, services, or anything of value is obtained." Former RCW 9.35.020(2)(b) (2001).[6] By its very terms, the

---

[5] The four second degree identity theft charges did not specify the value of the property Leyda allegedly obtained or attempted to attain. Similarly, the third degree theft charges did not state the value of the property unlawfully obtained. However, for the count of theft in the second degree, the State did set forth a value for the goods allegedly obtained.

[6] By "former," we refer to the version of the statute that existed at the time the alleged crimes were committed, i.e., 2002. RCW 9.35.020 has subsequently been

statute obviates value as an element of the crime of second degree identity theft and, thus, specification of the value is not necessary to establish the illegality of the behavior. However, similar to the higher degree theft statutes, value is an essential element that needs to be included when charging first degree identity theft because the statute provides a minimum value threshold of $1,500. Former RCW 9.35.020(2)(a). Because Leyda was charged with second, not first, degree identity theft, we hold that the challenged charging information is not constitutionally infirm.

## IV

¶13 Leyda's principal claim is that he should have been convicted of only one count of second degree identity theft. Specifically, he asserts that the Court of Appeals misidentified the applicable unit of prosecution and that his multiple convictions under RCW 9.35.020 violate double jeopardy by punishing him multiple times for the same offense. This is an issue of first impression.

■ ¶14 The double jeopardy provisions of the United States and Washington State Constitutions preclude convicting a defendant more than once under the same criminal statute if only one "unit" of the crime has been committed. *See* U.S. CONST. amend. V; CONST. art. I, § 9; *State v. Tvedt*, 153 Wn.2d 705, 710, 107 P.3d 728 (2005) (quoting *State v. Westling*, 145 Wn.2d 607, 610, 40 P.3d 669 (2002)). Thus, when a defendant is convicted of multiple violations of a single statute, the double jeopardy question focuses on what the legislature intended as the punishable act under the statute, i.e., what is the unit of prosecution. *Westling*, 145 Wn.2d at 610. That question may be answered by examining the plain language of the relevant statute. *Id.* If,

amended by redesignating former subsections (2)(a) and (b) as present subsections (2) and (3) and by adding the words "punishable according to chapter 9A.20 RCW" to present subsections (2) and (3). LAWS OF 2003, ch. 53, § 22. Despite this change, the statute remains substantively the same, and our holding in this case is to be applied to the current version of the statute.

however, we conclude that the legislature has failed to specifically define the unit of prosecution in the statute or if its intent in that regard is not clear, we must resolve the ambiguity in favor of the criminal defendant, thus preventing the State from turning a single transaction or course of conduct into multiple offenses. *Tvedt*, 153 Wn.2d at 711.

■ ¶15 The identity theft statute provides, in pertinent part, as follows:

(1) No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.

(2)(a) Violation of this section when the accused or an accomplice uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value in excess of one thousand five hundred dollars in value shall constitute identity theft in the first degree. Identity theft in the first degree is a class B felony.

(b) Violation of this section when the accused or an accomplice uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value that is less than one thousand five hundred dollars in value, or when no credit, money, goods, services, or anything of value is obtained shall constitute identity theft in the second degree. Identity theft in the second degree is a class C felony.

Former RCW 9.35.020(1)-(2).

¶16 Leyda contends that the language of this statute and its legislative history reveal that the legislature intended that the unit of prosecution is each piece of another person's financial information or identification that is unlawfully *obtained*, not the number of uses or attempted uses to which the single piece of unlawfully obtained information or identification is put. Leyda reads the statute as creating a continuing offense encompassing multiple uses of one individual's appropriated means of identification or financial information into a single unit of crime.

¶17 The State responds that because RCW 9.35.020 prohibits "use" of another's identification or information, it is apparent that the legislature intended that each use of the stolen identification or financial information "qualifies" as a unit of prosecution. The State reads the legislative history as revealing that when the legislature enacted the statute, it was primarily concerned with the harm caused by the use of the victim's stolen identity. It argues, therefore, that the legislature's intent was and is to make each discrete *use* of another's means of identification or financial information a unit of prosecution.[7]

¶18 The Court of Appeals agreed with the State. In doing so, it relied heavily on policy arguments to support its conclusion that "[t]he plain language of RCW 9.35.020 indicates the legislature intended to penalize the *use* of stolen information." *Leyda*, 122 Wn. App. at 636. As a result, the Court of Appeals held that the identity theft unit of prosecution is each separate use of the victim's means of identification or financial information with intent to commit a crime.

---

[7] The dissent agrees with the State that the unit of prosecution is "each individual use of the stolen identity." Dissent at 357. The dissent then indicates that each "use" means each "transaction," a transaction being defined as each "use, possession, transfer, or obtainment" of the stolen means of identification or information. *Id.* The dissent's definition of the term "use" is problematic for two reasons. First, the dissent's departure from the State's and the Court of Appeals' reading of the word "use," which they defined to mean each time the accused presented the stolen identification with the unlawful intent of getting something of value in return, i.e., a purchase, lends additional weight to Leyda's contention that the statute is susceptible to two or more reasonable interpretations. Second, the dissent's proposed separate transaction unit of prosecution creates a broad unit indeed and one that would likely run afoul of double jeopardy prohibitions. This is because, under the dissent's reading, an overzealous prosecutor might be tempted to divide up a defendant's single course of unlawful conduct ad infinitum, thereby resulting in hundreds of identity theft charges though the distinctions between such charges are inconsequential. *Accord State v. Adel*, 136 Wn.2d 629, 635, 965 P.2d 1072 (1998). For example, under the dissent's reading as applied retroactively to this case, even though only one credit card from one individual was stolen, Leyda could be charged with one count of identity theft when he obtained the Bon Marché card, one count for possessing the card initially, one count for transferring the card to Cooley, one count for possessing the card after Cooley transferred it back to him, and, as was the situation here, four times for each instance the card was used at the Bon Marché.

¶19 Although we disagree with both the Court of Appeals and the dissent that RCW 9.35.020, on its face, unambiguously states what is the unit of prosecution and, consequently, resort to principles of statutory construction to determine the legislature's intent,[8] we believe that neither the State's nor Leyda's position entirely reflects what the legislature intended as to the punishable act under the statute. For reasons we set forth hereafter, we conclude that the language of RCW 9.35.020 and its legislative history indicate that the legislature intended that the prosecution unit be any one act of either knowingly "obtain-[ing], possess[ing], us[ing], *or* transfer[ring]" a single piece of another's identification or financial information with the requisite unlawful intent. Former RCW 9.35.020(1) (emphasis added). Thus, once the accused has engaged in any one of the statutorily proscribed acts against a particular victim, and thereby committed the crime of identity theft, the unit of prosecution includes any subsequent proscribed conduct, such as using the victim's information to purchase goods after first unlawfully obtaining such information. *Accord State v. Root*, 141 Wn.2d 701, 710, 9 P.3d 214 (2000) (the unit of prosecution may be a single act or a course of conduct); *State v. Ramirez*, 2001 WI App 158, 246 Wis. 2d 802, 633 N.W.2d 656, 662 (Wisconsin identity theft statute created continuing offense encompassing value obtained as a result of the original theft of identity).

---

[8] The identity theft statute and the accompanying findings section both speak in terms of punishing a criminal defendant for "obtaining" and/or "using" another's means of identification or financial information. RCW 9.35.001, .020. Thus, because the plain words of the statute can be reasonably interpreted in more than one way, the only legal conclusion that is clear from reading the language of RCW 9.35.020 is that the statute, on its face, does not unambiguously denote the applicable unit of prosecution. *Accord State v. Keller*, 143 Wn.2d 267, 282, 19 P.3d 1030 (2001) (a statute is ambiguous when it can reasonably be interpreted in two or more ways); *In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 249-50, 955 P.2d 798 (1998). Even if we were to agree with Leyda and the State that the unit of prosecution is identified by a single factor in the statute, we cannot find a basis for choosing one of the listed proscribed acts over the other and, as a result, would be compelled to apply the rule of lenity in favor of Leyda's reading, thereby overturning three of his four second degree identity theft convictions on that ground. *Accord Tvedt*, 153 Wn.2d at 713.

A. Statutory Language and Construction

¶20 Contrary to the conclusion reached by the Court of Appeals, our reading of RCW 9.35.020 convinces us that the actual use of another's single means of identification or financial information may be an element of the offense of identity theft, but not always. The language of the statute reveals that the legislature intended to establish an offense which has two elements—first, the accused must have engaged in a proscribed act involving another's means of identity or financial information and, second, the accused must have done so with the intent to commit, or to aid or abet, a crime. Former RCW 9.35.020(1). As indicated by the use of the word "or," the proscribed acts are disjunctive. Thus, under the statute's express language, "use" is a way to commit identity theft, but it is not the only way. An individual also commits identity theft when he has *either* possessed, obtained, used, or transferred a means of another's identification or information with the requisite intent.

¶21 This is not to suggest that the statute does not allow an accused to be charged with multiple counts of identity theft. Under RCW 9.35.020(1), identity theft is a crime committed against each person whose identity has been stolen. Therefore, there would not be a constitutional violation if the State charged an accused with a different count each time he uses, possesses, transfers, or obtains a separate individual's means of identification or financial information.[9] Thus, Leyda could have been properly charged with multiple counts of identity theft if he had obtained,

---

[9] Similarly, a separate unit of prosecution may be charged where the accused has either possessed, obtained, used, or transferred multiple means of a single individual's financial information or identification with the requisite intent. This reading is consistent with our decisions in *State v. Graham*, 153 Wn.2d 400, 103 P.3d 1238 (2005), *Westling*, 145 Wn.2d 607, *Root*, 141 Wn.2d 701, and, most recently, in *State v. Ose*, 156 Wn.2d 140, 124 P.3d 635 (2005), cases in which we interpreted the use of the word "a" in a criminal statute to authorize multiple units of punishment, even when the proscribed conduct occurred simultaneously. For example, in *Ose* this court held that by using the singular "a" stolen access device, RCW 9A.56.160(1)(c) unambiguously defined the unit of prosecution for second degree possession of stolen property as each individual access device in the defendant's possession at the time of arrest. *Ose*, 156 Wn.2d at 146. The identity theft statute, like the possession of stolen property statute, also uses the singular

used, etc., the stolen credit cards of two or more persons. But, that is not the factual scenario here, the record showing that Leyda obtained, possessed, etc., a single credit card of one other individual, Ms. Austin. Thus, the State improperly charged him with multiple thefts of Austin's identity, who, common sense suggests, has only one identity that can be unlawfully appropriated.

¶22 Former RCW 9.35.020(2)(a) and (b) lend further support to a conclusion that the legislature did not intend that each "use" constitutes a separate unit of prosecution. Similar to RCW 9.35.020(1), these sections distinguish the manner by which the crime of identity theft can be committed. Under former RCW 9.35.020(2)(a) and (b), an offender who actually uses another's single piece of identification or financial information multiple times is subject to only one unit of prosecution, with the degree of the crime determined by the "aggregate" economic value of what he obtained while using the information or identification. *Accord State v. Turner*, 102 Wn. App. 202, 209, 6 P.3d 1226 (2000) (courts may look to the value element to ascertain legislative intent for the unit of prosecution). However, even if the offender does not *use* the stolen means of identification or information to obtain anything of value or if nothing of value is obtained by the use, the defendant has still committed the crime of identity theft due to an act of obtaining, possessing, or transferring another's identification or information. Former RCW 9.35.020(2)(b).

---

"a." It is a means of identification or the financial information that is possessed, obtained, used, or transferred with the intent to commit a crime that defines the unit of prosecution. Thus, under RCW 9.35.020, when a person possesses, obtains, uses, or transfers *a* means of identifying information, there is only one crime. Again, Leyda obtained only *a* (singular) means of one other's identification and *used* it multiple times, whereas the defendant Ose possessed multiple access devices from multiple persons. The State charged Leyda not with a count for possession of *a* means of identification but charged four counts based on Leyda and Cooley using *a* means of identification over a short period of time. The State cannot skirt double jeopardy protections by breaking a single crime into temporal or spatial units. *Adel*, 136 Wn.2d at 635 (citing *Brown v. Ohio*, 432 U.S. 161, 169, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977)). The State engaged in this prohibited conduct when it charged Leyda with four separate identity theft counts based on a single course of conduct. The only difference between the four charges was the *date* on which Austin's misappropriated card was used.

¶23 The State and the dissent take issue with Leyda's contention that if the legislature intended each discrete use to constitute a separate unit of prosecution, then the phrase "aggregate total" as that term is used in the statute is "superfluous." Suppl. Br. of Pet'r at 11. We agree with Leyda's reading. Under the plain language of the statute, when charging identity theft, the prosecutor must, under former RCW 9.35.020(2), determine whether the stolen identification or financial information was *actually* used. If it was, then the prosecutor aggregates the total value of credit, money, goods, or services obtained by the use in order to charge the crime in the first or second degree. When read in conjunction with RCW 9.35.020(1) creating the identity theft unit of prosecution, the aggregate total language in subsection .020(2) penalizes a defendant for his course of conduct after he steals another's identity. The penalty is not calculated, as the State suggests, by separating each use into a separate transaction and aggregating the total value obtained during that particular transaction to determine the degree of crime. Instead, the statute requires aggregation of the total amount of value obtained by use of the stolen means.

¶24 To "aggregate" means "[t]o collect into a whole." BLACK'S LAW DICTIONARY 72 (8th ed. 2004). To give effect to the words "aggregate total," the statute must be read to require all the accused's uses of the means of another individual's stolen identification or financial information be treated as a single continuing offense in order for the prosecutor to collect the value obtained into a "whole." To read the statute another way reads out the word "aggregate," running afoul of the requirement that a court not read out express language from a statute. *State v. Azpitarte*, 140 Wn.2d 138, 142, 995 P.2d 31 (2000).

B. Legislative History

¶25 The legislative history of the identity theft statute supports our determination as well. As enacted, RCW

9.35.020(1) proscribed both the use *and/or transfer* of the unlawfully obtained information, indicating the legislature was concerned with more than just the misuse of the stolen identity. Laws of 1999, ch. 368, § 3. Furthermore, as demonstrated by the findings it set forth, in enacting RCW 9.35.020, the legislature intended to criminalize the act by which another's identity is misappropriated, not the act(s) of using another's identity after stolen.[10] It is, in our view, difficult to reconcile the stated focus on the act of improperly obtaining another's identity with the Court of Appeals' and the dissent's authoritative pronouncements that the legislature's clear intent was to penalize each use of the identity once obtained.

¶26 The initial statutory construct indicates that the legislature sought, by enacting RCW 9.35.020, to discourage individuals from stealing another person's identity in the first instance by defining identity theft as an improper acquisition of personal information. The legislature was primarily concerned about, and thereby sought to criminalize, the harm done to the victim by the actual theft of his or her identity, not the use of the identity after the initial theft as the State asserts. A subsequent change to the statute bears out that view of the statute at hand.

¶27 In 2001, the legislature amended the identity theft statute by dividing the crime into two degrees. Laws of 2001, ch. 217, § 9.[11] This legislative determination to bifurcate further supports the conclusion that the legisla-

---

[10] In its statement of intent, the legislature wrote "financial information is personal and sensitive information that if *unlawfully obtained* by others may do significant harm to a person's privacy, financial security, and other interests." Laws of 1999, ch. 368, § 1 (emphasis added). "The legislature intends to penalize unscrupulous people for *improperly obtaining* financial information." RCW 9.35.001 (emphasis added).

[11] The legislature also amended RCW 9.35.020(1) to specifically proscribe the acts of "obtain[ing]" and "possess[ing]" another's "means of identification or financial information." Laws of 2001, ch. 217, § 9. The dissent analyzes this change and the legislature's division of the crime into two degrees in terms of abrogating "use" as the unit of prosecution. *See* dissent at 357. This assertion is not well grounded, as it presupposes that "use" constituted the unit of prosecution prior to the 2001 amendment. As the dissent itself notes, the prior statute ambiguously spoke in terms of punishing both the use or transfer of a means of identification. The dissent's conclusory determination that "use" constituted the unit of prosecu-

ture intended that the punishable conduct encompass more than the act(s) of actually using the stolen identity. Recognizing that repeated misuse of the victim's identity, once stolen, results in ever increasing harm to the victim, RCW 9.35.020(2), as amended, elevates the degree and classification of the offense based on a sliding scale of aggregate economic damages. The more the accused uses the stolen identification or information, the more severe the offense charged (increasing from a class C to a class B felony), and the more severe the sentence imposed.

¶28 Contrary to the proposition for which the State and the dissent put both the language of subsection .020(2) and the statute's legislative history, the legislature's decision to penalize more severely the actual use of the identity does not equate to showing its intent that each separate use constitutes a unit of prosecution. Rather, the decision indicates the legislature's intent to mete out a *greater degree of punishment* based upon what is done with the stolen identity *after* the crime has been committed by way of unlawfully obtaining, possessing, using, or transferring it.

### C. Application of the Unit of Prosecution to the Facts of This Case

¶29 Once the statutory unit of prosecution is determined, an analysis is necessary to decide whether, under the facts of the case, more than one unit of prosecution is present. *Tvedt*, 153 Wn.2d at 717 (citing *State v. Bobic*, 140 Wn.2d 250, 266, 996 P.2d 610 (2000)). Multiple convictions will not violate double jeopardy only when the accused's conduct supports multiple units of prosecution being charged. *Id.*

tion in former RCW 9.35.020 is nothing more than speculation disguised as authority and lends further credence to our determination that the identity theft statute is ambiguous. We interpret the legislature's decision to add the words "obtain" and "possess" to the statute as its attempt to combat the rapidly expanding identity theft problem by more clearly defining and broadening the way in which an accused may be found to have committed the crime.

¶30 Applying what the legislature intended as the proper unit of prosecution to the facts of this case shows that Leyda was wrongly charged with and convicted of four counts of identity theft. Under RCW 9.35.020(1), Leyda committed the crime of identity theft the moment he "obtained" a means of financial information (i.e., the Bon Marché credit card) of Cynthia Austin with the intent to commit, or to aid or abet, the crime of theft. He did not violate the statute each of the four times the stolen card was subsequently presented to make a purchase. Under former RCW 9.35.020(2), the prosecutor was required to determine whether Leyda used the stolen means of financial information and to determine the aggregate total of value obtained by use of that information. In this case, Leyda used the card and the aggregate total of goods obtained by the use was less than $1,500. Under RCW 9.35.020(2)(b), Leyda's single course of illegal conduct amounted to one count of second degree identity theft. He should have been charged and convicted accordingly.

V

¶31 In *Tinker*, 155 Wn.2d 219, we held that value is not an element of third degree theft. We hold now that value of the property and services unlawfully obtained is also not an essential element of the crime of second degree identity theft and need not be alleged in the charging document. We affirm the Court of Appeals on that issue and uphold the challenged third degree theft convictions. However, we hold that the Court of Appeals applied the wrong unit of prosecution when it held that each use of stolen personal information is a separate unit of prosecution. Therefore, we reverse the portion of the Court of Appeals' decision which affirms Leyda's four separate identity theft convictions and remand for resentencing based upon a conviction for one count of identity theft in the second degree.

C. JOHNSON, MADSEN, SANDERS, BRIDGE, OWENS, and FAIRHURST, JJ., concur.

¶32 J.M. JOHNSON, J. (dissenting) — Stephen Leyda was convicted of four counts of second degree identity theft stemming from the following incidents. On October 21, 2002, Leyda and his girl friend used Cynthia Austin's Bon Marché credit card to purchase several items at the Bon Marché. On October 26, 2002, Leyda and his girl friend again used Ms. Austin's card to make two separate purchases at different registers in the Bon Marché. On each of these occasions, Leyda's girl friend signed the credit card receipt. On November 2, 2002, Leyda and his girl friend attempted to make yet another purchase with Ms. Austin's credit card at the Bon Marché but were eventually apprehended by the police.

¶33 Leyda claims, and the majority agrees, that the trial court employed the wrong "unit of prosecution" when it convicted him of one count of identity theft for each use or attempted use of a stolen credit card. However, the plain language of the identity theft statute establishes that the legislature intended for each use to be a "unit of prosecution." Thus, I dissent.

¶34 The principles of double jeopardy protect a defendant from being convicted more than once under the same statute if the defendant commits only one unit of the crime. *State v. Tvedt*, 153 Wn.2d 705, 710, 107 P.3d 728 (2005). In order to resolve whether double jeopardy principles are violated when a defendant is convicted of multiple violations of the same statute, we must determine what unit of prosecution the legislature intends to be the punishable act under the statute. *Id.*

¶35 In determining legislative intent, we first look to the plain meaning of the statute. *State v. Ose*, 156 Wn.2d 140, 144, 124 P.3d 635 (2005). The meaning of a plain and unambiguous statute must be derived from the wording of the statute itself. *State v. Tili*, 139 Wn.2d 107, 115, 985 P.2d 365 (1999). A statute is ambiguous if it is susceptible to two or more reasonable interpretations, but it is not ambiguous merely because different interpretations are conceivable. *Id.* However, "[i]f the Legislature has failed to denote the

unit of prosecution in a criminal statute, the United States Supreme Court has declared the ambiguity should be construed in favor of lenity." *State v. Adel*, 136 Wn.2d 629, 634-35, 965 P.2d 1072 (1998) (citing *Bell v. United States*, 349 U.S. 81, 84, 75 S. Ct. 620, 99 L. Ed. 905 (1955)).

¶36 The identity theft statute provides:

(1) No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.

(2)(a) Violation of this section when the accused or an accomplice uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value in excess of one thousand five hundred dollars in value shall constitute identity theft in the first degree. Identity theft in the first degree is a class B felony.

(b) Violation of this section when the accused or an accomplice uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value that is less than one thousand five hundred dollars in value, or when no credit, money, goods, services, or anything of value is obtained shall constitute identity theft in the second degree. Identity theft in the second degree is a class C felony.

Former RCW 9.35.020(1)-(2) (2001).[12]

¶37 Leyda contends that once an individual has acquired another's personal information with the intent to commit a crime, the unit of prosecution "encompasses any subsequent use of that information." Suppl. Br. of Pet'r at 5. The plain language of the statute belies Leyda's interpretation.

¶38 The statute penalizes knowingly "obtain[ing] a means of identification," "possess[ing] a means of identification," "us[ing] a means of identification," or "transfer[ring] a means of identification" with the intent to commit, aid, or abet any crime. Former RCW 9.35.020(1).

---

[12] The statute has been subsequently amended but is substantively the same. *See* LAWS OF 2003, ch. 53, § 22.

This statute is clear and plain regarding its meaning—the statute by its terms penalizes each use, possession, transfer, or obtainment of a means of identification when the requisite intent is present.

¶39 The statute also penalizes knowingly "obtain[ing] financial information," "possess[ing] financial information," "us[ing] financial information," or "transfer[ring] financial information" with the intent to commit, aid, or abet any crime. Former RCW 9.35.020(1). The meaning here is also clear and plain—each use, possession, transfer, or obtainment of financial information is a criminal act, and thus a unit of prosecution, when the requisite intent is present.

¶40 While arguably one could "possess" financial information[13] or a means of identification[14] only once, one could use or transfer the same financial information or means of identification many times. One could also "obtain" the same financial information or means of identification multiple times from multiple sources. For example, one might obtain the same individual's Social Security number by "dumpster

---

[13] "Financial information" is defined as:

any of the following information identifiable to the individual that concerns the amount and conditions of an individual's assets, liabilities, or credit:

(a) Account numbers and balances;

(b) Transactional information concerning an account; and

(c) Codes, passwords, social security numbers, tax identification numbers, driver's license or permit numbers, state identicard numbers issued by the department of licensing, and other information held for the purpose of account access or transaction initiation.

RCW 9.35.005(1).

[14] "Means of identification" is defined as:

information or an item that is not describing finances or credit but is personal to or identifiable with an individual or other person, including: A current or former name of the person, telephone number, an electronic address, or identifier of the individual or a member of his or her family, including the ancestor of the person; information relating to a change in name, address, telephone number, or electronic address or identifier of the individual or his or her family; a social security, driver's license, or tax identification number of the individual or a member of his or her family; and other information that could be used to identify the person, including unique biometric data.

RCW 9.35.005(3).

diving" in that individual's trash or by "phishing" for that means of identification by sending that individual a misleading e-mail. *See* Holly K. Towle, *Identity Theft: Myths, Methods, and New Law*, 30 RUTGERS COMPUTER & TECH. L.J. 237, 248-50 (2004); Jennifer Lynch, *Identity Theft in Cyberspace: Crime Control Methods and Their Effectiveness in Combating Phishing Attacks*, 20 BERKELEY TECH. L.J. 259 (2005).

¶41 Nothing in the plain language of former RCW 9.35.020(1) indicates that the legislature wanted to group all uses of a single piece of identification or information into a single criminal act. Leyda attempts to make former RCW 9.35.020(1) ambiguous by arguing that "[i]f the Legislature intended each use to constitute a unit of prosecution, the phrase 'aggregate total' [in former RCW 9.35.020(2)] is superfluous." Suppl. Br. of Pet'r at 11. However, merely because Leyda misreads sections (1) and (2) together does not make section (1) ambiguous. Section (1) by itself is plain and unambiguous. Moreover, reading sections (1) and (2) together also unambiguously identifies the unit of prosecution. Leyda's argument of ambiguity is based on a misidentification of the time period for aggregation. In fact, Leyda's contention regarding the aggregation of the value of "credit, money, goods, services, or anything else of value" actually undercuts his argument.

¶42 The statute creates the crime of identity theft in the first degree when the accused "uses the victim's means of identification or financial information and obtains an aggregate total of credit, money, goods, services, or anything else of value in excess of one thousand five hundred dollars." Former RCW 9.35.020(2)(a). The statute does not require aggregation of all different "uses" but the aggregation of the "credit, money, goods, services, or anything else of value." In a single transaction one can obtain credit in an amount greater than $1,500, and one could obtain multiple lines of credit from a single financial institution in a single transaction. One can use financial information to purchase multiple goods or services in an amount greater than

$1,500 during a single transaction. And one could obtain money or anything else of value in an amount greater than $1,500. The "aggregate total" language, far from being superfluous, serves to separate those *uses* of financial information or a means of identification in which the value obtained is greater than $1,500 from those in which the value is less than $1,500, regardless of the number of lines of credit, goods, or services obtained per use.

¶43 Second degree identity theft occurs when the use of the victim's financial information or means of identification obtains less than $1,500, *or* when the use, possession, transfer, or obtaining of financial information or a means of identification does not result in obtaining anything of value. *Acquiring* the financial information or means of identification, *possessing* the financial information or means of identification, and *transferring* financial information or means of identification with the intent to commit a crime may not be acts that result in obtaining credit, goods, services, money, or anything else of value, and would thus constitute second degree identity theft.

¶44 The plain language of the statute denotes that the legislature intended the unit of prosecution to be each individual use (or transfer, possession, or obtainment). The majority skips over the plain language and, without declaring the statute ambiguous, turns to legislative history. However, the legislative history further supports the plain language of the statute.

¶45 When enacted in 1999, the identity theft statute read:

No person may knowingly use or knowingly transfer a means of identification of another person with the intent to commit, or to aid or abet, any unlawful activity harming or intending to harm the person whose identity is used, or for committing any felony.

LAWS OF 1999, ch. 368, § 3.

¶46 The unit of prosecution in this precursor statute was the use or transfer of a means of identification with the

intent to commit a crime. It would be peculiar to interpret the legislature's *addition* of the "obtaining" or "possessing" methods of committing identity as abrogating the individual use as the unit of prosecution. The separation of the crime into two degrees recognizes the greater harm to the victim[15] that occurs when the victim's means of identification or financial information is used to obtain greater economic benefit than the mere acquisition or transfer of such data or a lesser use.

¶47 In the present case, the unit of prosecution is each individual use of the stolen identity, i.e., the stolen credit card. The unit of prosecution is each transaction (whether it be use, possession, transfer, or obtainment). The State did not charge each *purchase* as a separate count but rather charged each transaction. The plain meaning of "use" with regard to a credit card would dictate that regardless of how many items are purchased at once, the credit card is "used" only once in each transaction.

¶48 Logically, each time a person signs a credit slip or enters a PIN (personal identification number), the credit card has been used and a single transaction has occurred (although multiple purchases may have been made). Each use is a separate chargeable offense. As noted above, the aggregation of the items purchased then determines the degree of the crime.

¶49 In sum, simply because a defendant can misread the identity theft statute does not make it ambiguous. I would hold that the unit of prosecution for identity theft is each individual use, transfer, possession, or obtainment of a means of identification or financial information. I am confident that the plain language of the statute evidences this commonsense result that the legislature intended. I would affirm Leyda's convictions. Thus, I dissent.

CHAMBERS, J., concurs with J.M. JOHNSON, J.

---

[15] " 'Victim' means a person whose means of identification or financial information has been used or transferred with the intent to commit, or to aid or abet, any unlawful activity." RCW 9.35.005(5).