214 P.3d 215 (2009)
STATE of Washington, Respondent,
v.
Dedrick Demond THOMAS, Appellant.
No. 37112-0-II.
Court of Appeals of Washington, Division 2.
August 25, 2009.
Rebecca Wold Bouchey, Attorney at Law, Mercer Island, WA, for Appellant.
Michelle Luna-Green, Pierce Co. Pros. Attorney, Tacoma, WA, for Respondent.
PENOYAR, J.
¶ 1 Dedrick Thomas appeals his eight witness tampering convictions, arguing that his *216 conduct should be treated as one unit of prosecution for double jeopardy purposes. Because the unit of prosecution for witness tampering is an instance of attempting to induce a witness or person to do any of the actions set forth in RCW 9A.72.120, Thomas's convictions are properly separate and do not violate double jeopardy. We affirm.

FACTS
¶ 2 The State charged Thomas for the first and second degree assault of his girlfriend, Victoria Montgomery.[1] On January 3, 2007, Montgomery testified against Thomas on the State's behalf. On January 6, Thomas began calling Montgomery from the Pierce County Jail in an attempt to persuade her to change her testimony. He made approximately 36 calls to her over a four-day period.[2]
¶ 3 During the course of these telephone calls, Thomas convinced Montgomery to write a letter to his attorney in which she recanted her previous testimony and stated that Thomas's cousin had actually assaulted her. In the letter, she explained that she had lied because Thomas's cousin put a gun to her head and her child's head and that she was scared for her life. Montgomery stated, "I feel so bad that I lied [about] Dedrick and told everyone that he did it," and "I feel so much better to finally tell the truth." Ex. 4. After defense counsel shared a copy of Montgomery's letter with the State, authorities began to investigate Thomas's telephone calls from the jail. Ultimately, the defense did not call Montgomery to testify at trial.
¶ 4 At the close of the assault trial,[3] the State charged Thomas with eight counts of witness tampering under RCW 9A.72.120(1)(a) and four counts of violating a no contact order under RCW 26.50.110(1).[4] During his subsequent trial, the State played Thomas's calls to Montgomery for the jury. The trial court admitted a chart documenting these calls. On August 23, 2007, the jury convicted Thomas on all counts.
¶ 5 On November 8, 2007, the trial court sentenced Thomas to 365 days of confinement for each count of violating a no contact order and 60 months of confinement for each witness tampering conviction, each concurrent with each other and with his misdemeanor convictions. Thomas now appeals.

ANALYSIS
¶ 6 Thomas asks that we reverse seven of his eight witness tampering convictions and remand for resentencing. We deny his request.

I. Standard of Review
¶ 7 We review questions of law de novo. State v. Womac, 160 Wash.2d 643, 649, 160 P.3d 40 (2007). The Double Jeopardy Clause of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy *217 of life or limb." U.S. Const. amend. 5. The Washington State Constitution provides that "[n]o person shall be ... twice put in jeopardy for the same offense." Const. art. I, § 9. Washington's clause provides the same protection as the federal clause. In re Pers. Restraint of Davis, 142 Wash.2d 165, 171, 12 P.3d 603 (2000).
¶ 8 "Double jeopardy principles protect a defendant from being convicted more than once under the same statute if the defendant commits only one unit of the crime." State v. Westling, 145 Wash.2d 607, 610, 40 P.3d 669 (2002) (citing State v. Adel, 136 Wash.2d 629, 634, 965 P.2d 1072 (1998)). In order to resolve whether double jeopardy principles are violated when a defendant is convicted of multiple violations of the same statute, we must determine what unit of prosecution the legislature intends as the punishable act under the statute. Westling, 145 Wash.2d at 610, 40 P.3d 669.
¶ 9 In determining the legislative intent as to the unit of prosecution, we must first look to the relevant statute. We derive the meaning of a plain, unambiguous statute from the statutory language. Westling, 145 Wash.2d at 610, 40 P.3d 669. If a statute is ambiguous as to the unit of prosecution, the rule of lenity requires that any ambiguity be "resolved against turning a single transaction into multiple offenses." Adel, 136 Wash.2d at 635, 965 P.2d 1072 (quoting Bell v. United States, 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955)).

II. Tampering with a Witness
¶ 10 Thomas argues, and the dissent agrees, that the unit of prosecution under the witness tampering statute is "each witness." Appellant's Br. at 7. Because all of his conversations with Montgomery formed an attempt to persuade one witness to change her testimony, Thomas contends, only one unit of prosecution for witness tampering exists in this case. The State responds that the unit of prosecution for witness tampering is "each attempt to influence a witness's testimony." Resp't's Br. at 1.
¶ 11 RCW 9A.72.120 provides:
(1) A person is guilty of tampering with a witness if he or she attempts to induce a witness or person he or she has reason to believe is about to be called as a witness in any official proceeding or a person whom he or she has reason to believe may have information relevant to a criminal investigation or the abuse or neglect of a minor child to:
(a) Testify falsely or, without right or privilege to do so, to withhold any testimony; or
(b) Absent himself or herself from such proceedings; or
(c) Withhold from a law enforcement agency information which he or she has relevant to a criminal investigation or the abuse or neglect of a minor child to the agency.
(2) Tampering with a witness is a class C felony.
(Emphasis added).
¶ 12 Thomas cites to cases addressing the unit of prosecution for offenses such as rape, arson, and possession of a controlled substance. In a statement of additional authorities, however, the State cites to State v. Hall, 147 Wash.App. 485, 196 P.3d 151 (2008), an opinion published in part in which Division One of this court held that the unit of prosecution for tampering with a witness is any instance of attempting to induce a witness or person to do any of the actions set forth in RCW 9A.72.120.[5]Hall is instructive, as the facts and the argument the defendant made in that case are virtually identical to those presented here.
¶ 13 In Hall, the State initially charged the defendant with one count of first degree burglary with a firearm enhancement and one count of second degree assault. 147 Wash. App. at 487, 196 P.3d 151. The witness tampering charges arose from telephone calls Hall made from jail to his girlfriend regarding her anticipated testimony about his whereabouts on the night in question and about a gun found in her apartment that allegedly belonged to Hall. Hall, 147 Wash. App. at 487, 196 P.3d 151. Hall's girlfriend *218 testified that during these calls, Hall asked her either to absent herself from trial or testify falsely. Hall, 147 Wash.App. at 487, 196 P.3d 151.
¶ 14 The jury acquitted Hall on one count of second degree assault and one count of tampering with a witness, but it found him guilty of one count of first degree burglary with a firearm enhancement, one count of second degree assault, one count of second degree unlawful possession of a firearm, and three counts of witness tampering. Hall, 147 Wash.App. at 487-88, 196 P.3d 151. On appeal, Hall argued that his multiple convictions for witness tampering violated the prohibition against double jeopardy. Specifically, Hall argued that the unit of prosecution is "a course of conduct directed towards a witness or a person in relation to a specific proceeding" and that, because the language of the statute focuses on a specific witness and a specific proceeding, "it does not matter how many attempts a defendant makes to tamper with a single witness as long as the intent to obstruct justice in the specific proceeding remains the same." Hall, 147 Wash. App. at 489, 196 P.3d 151. In the alternative, Hall argued that the statutory language is ambiguous and therefore should be construed in his favor under the rule of lenity. Hall, 147 Wash.App. at 489, 196 P.3d 151.
¶ 15 Division One rejected Hall's arguments, stating:
Hall's reading of the statute is incorrect. The statute prohibits any attempt to induce a witness or potential witness to do any of the actions enumerated. The focus is upon the attempt to induce, not on the specific identity of the person or proceeding. There is no ambiguity here.
Hall, 147 Wash.App. at 489, 196 P.3d 151 (emphasis added) (footnote omitted). Accordingly, the court held that the unit of prosecution for tampering with a witness is any one instance of attempting to induce a witness or person to do any of the actions set forth in RCW 9A.72.120. Hall, 147 Wash. App. at 490, 196 P.3d 151.
¶ 16 Hall is indistinguishable from the present case. Like Hall, Thomas argues that the unit of prosecution for witness tampering is the witness or the testimony. Like Division One noted in Hall, however, if we were to adopt Thomas's reasoning, a defendant would have no incentive to stop contacting someone after the first attempt, "as he would expose himself to criminal liability for only one count of witness tampering no matter how many efforts he made to induce the witness to disappear or testify falsely." 147 Wash.App. at 489, 196 P.3d 151. This result would not serve the legislature's stated goal of safeguarding effective prosecution of criminal conduct and promoting public safety in this state. See LAWS of 1994, ch. 271, § 201.
¶ 17 Furthermore, the legislature could have written RCW 9A.72.120 as follows: "A person is guilty of tampering with a witness if he or she induces a witness or person he or she has reason to believe is about to be called as a witness." The State could then use the general attempt statute, RCW 9A.28.020, to charge a defendant when the inducement failed. Because the legislature clearly included attempt as an element in RCW 9A.72.120, however, once the attempt is complete (i.e. substantial step) the crime is completed.
¶ 18 The present case is unlike cases involving identity theft, for example, in which the "fall out" occurs after the victim's identity is stolen. Here, Thomas attempted to induce Montgomery to testify falsely and was required to reinitiate his crime. The State charged the offenses based on whether Thomas reinitiated contact with an intent to tamper with a different tactic or whether the contact was arbitrarily broken by the jail's electronic telephone system. This is similar to other cases in which there is renewed intention or lapses in time and/or place, and in which there are repeated but separate criminal acts (i.e. assaults, serial thefts).
¶ 19 Thomas does not argue on appeal that the counts do not accurately reflect an "instance of attempting to induce" Montgomery to testify falsely. Hall, 147 Wash.App. at 490, 196 P.3d 151. Therefore, we need not determine whether the State's decision to charge Thomas with eight counts of witness tampering, rather than one or thirty-six, was appropriate under the facts given in this *219 case. The record demonstrates that the State reviewed the content of Thomas's phone calls and determined that each count reflected "the separation of the time in contacts as well as increasing coercion, and the evolving story which [Thomas] attempted to pitch to [Montgomery]." Resp't's Br. at 14. The State does not argue that each telephone call supports a separate witness tampering charge in this case. The breaks in time, the method (multiple phone calls over multiple days), and different and distinct manners in which Thomas attempted to induce Montgomery to testify falsely (fine-tuning and altering Montgomery's story over a period of time) support the State's decision to charge Thomas as it did with eight separate attempts and the jury's decision to convict him on all eight counts. We affirm Thomas's convictions.
I concur: QUINN-BRINTNALL, J.
VAN DEREN, C.J. (dissenting).
¶ 20 I respectfully dissent. I would hold that RCW 9A.72.120 is ambiguous regarding the intended unit of prosecution and, therefore, the rule of lenity requires that we resolve this matter in Thomas's favor and hold that Thomas's attempts to influence Montgomery's testimony gave rise to a single unit of prosecution.
¶ 21 A statute is ambiguous when its language is susceptible to more than one reasonable interpretation. State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007). We resolve any ambiguity under the rule of lenity to avoid "`turning a single transaction into multiple offenses.'" State v. Adel, 136 Wash.2d 629, 634-35, 965 P.2d 1072 (1998) (quoting Bell v. United States, 349 U.S. 81, 84, 75 S.Ct. 620, 99 L.Ed. 905 (1955)).
¶ 22 The Supreme Court's analysis of former RCW 9.35.020 (2001)[6] in State v. Leyda, 157 Wash.2d 335, 138 P.3d 610 (2006) is instructive and should guide our interpretation of RCW 9A.72.120. In Leyda, the State charged Leyda with separate counts of identity theft for each of four uses or attempted uses of a stolen credit card. A jury convicted Leyda of all four counts. Leyda, 157 Wash.2d at 339, 138 P.3d 610. On appeal, Division One of our court held that the unambiguous unit of prosecution under former RCW 9.35.020 was each use of stolen information. State v. Leyda, 122 Wash.App. 633, 635, 94 P.3d 397 (2004). It reasoned that, under Leyda's alternate course of conduct reading, an "identity thief would thus have a strong incentive to use a stolen card as often and for as much as possible, knowing that he or she could be charged with only one count."[7]Leyda, 122 Wash.App. at 638, 94 P.3d 397.
¶ 23 On review, our Supreme Court noted Division One's "heav[]y reliance on policy arguments to support its conclusion." Leyda, 157 Wash.2d at 344, 138 P.3d 610. Nonetheless, the court held that former RCW 9.35.020 was ambiguous. Leyda, 157 Wash.2d at 345 n. 8, 138 P.3d 610. The court focused on the enumerated verbs "obtain[], possess[], us[e], or transfer[]" and the disjunctive word "or." Leyda, 157 Wash.2d at 345-46, 138 P.3d 610. It held that the statutory use of the disjunctive indicated that, while "`use' [wa]s a way to commit identity theft, but it [wa]s not the only way."[8]Leyda, *220 157 Wash.2d at 346, 138 P.3d 610. The court concluded:
[O]nce the accused has engaged in any one of the statutorily proscribed acts against a particular victim, and thereby committed the crime of identity theft, the unit of prosecution includes any subsequent proscribed conduct, such as using the victim's information to purchase goods after first unlawfully obtaining such information. Leyda, 157 Wash.2d at 345, 138 P.3d 610.
¶ 24 Similarly, RCW 9A.72.120(1) proscribes:
[a]ttempts to induce a witness or person... to:
... [t]estify falsely or, without right or privilege to do so, to withhold any testimony; or
... [a]bsent himself or herself from such proceedings; or
... [w]ithhold from a law enforcement agency information which he or she has relevant to a criminal investigation or the abuse or neglect of a minor child to the agency.
(Emphasis added.) Accordingly, RCW 9A.72.120(1) may likewise be interpreted as proscribing a course of conduct aimed at attempting to induce a witness to change his or her testimony. Once the defendant attempts to tamper with a witness by any of these proscribed methods, the unit of prosecution includes all subsequent tampering attempts directed toward that witness.
¶ 25 In Leyda, the court also examined numerous cases interpreting the use of "a" in a criminal statute and stated:
The identity theft statute, like the possession of stolen property statute, also uses the singular "a." It is a means of identification or the financial information that is possessed, obtained, used, or transferred with the intent to commit a crime that defines the unit of prosecution. Thus, under [former RCW 9.35.020], when a person obtains, uses, or transfers a means of identifying information, there is only one crime. Again, Leyda only obtained a (singular) means of one other's identification and used it multiple times.
Leyda, 157 Wash.2d at 347 n. 9, 138 P.3d 610.
¶ 26 Here, RCW 9A.72.120(1) proscribes attempting to tamper with "a witness" through the proscribed methods. The majority cites with approval Division One's statement in Hall that "`[t]he statute prohibits any attempt to induce a witness or potential witness to do any of the actions enumerated. The focus is upon the attempt to induce, not on the specific identity of the person or proceeding. There is no ambiguity here.'" Majority at 218 (quoting State v. Hall, 147 Wash.App. 485, 489, 196 P.3d 151 (2008)). But contrary to the statement that RCW 9A.72.120(1) contains the word "any" as a modifier for "attempt" or "attempts," RCW 9A.72.120(1) does not contain such a modifier. This reading of the statute expands its reach well beyond its stated criminalization of attempts to tamper with "a" witness. Furthermore, even if RCW 9A.72.120(1) included the word "any," it would not necessarily resolve the ambiguity. "The word `any' must necessarily be read in the context of the rest of the relevant statutory language, and often will not, by itself, disclose the meaning of a statute." State v. Westling, 145 Wash.2d 607, 612 n. 2, 40 P.3d 669 (2002). I agree with the majority that the legislature criminalized attempts to induce a witness to change his or her testimony but not that it separately criminalized each argument, each telephone call, each letter, or each attempt directed at the same witness.
¶ 27 Oral argument amply demonstrated that the judiciary, the prosecutor, and the defense all remain uncertain about the legislature's intended unit of prosecution. There was no consensus about whether the unit of prosecution is each call, each day, or each argument used by Thomas. The State explained *221 that the eight charges here resulted from application of prosecutorial discretion based on either (1) when each of the 36 calls were made during the three-day period, (2) whether the calls were made several hours apart, or (3) whether Thomas relied on different arguments to persuade Montgomery to change her testimony. Finally, the State admitted that it was not entirely clear how the eight charges were derived. The majority's opinion supports this deferential and imprecise approach to deciding the unit of prosecution, contrary to the rule that it is the legislature's job to define a crime's unit of prosecution. See Adel, 136 Wash.2d at 634, 965 P.2d 1072 ("The Legislature has the power, limited by the Eighth Amendment, to define criminal conduct and set out the appropriate punishment for that conduct.").
¶ 28 Because competing, reasonable interpretations of RCW 9A.72.120 create the possibility of one to thirty-six possible witness tampering charges against Thomas based on a course of conduct to persuade Montgomery to change her testimony, I would hold that the statute is ambiguous regarding the intended unit of prosecution. Thus, multiple convictions violate Thomas's right to be free of double jeopardy. Adel, 136 Wash.2d at 635, 965 P.2d 1072.
¶ 29 This ambiguity is easily fixed by the legislature. Clarity of the intended unit of prosecution will protect all citizens' rights and accomplish the ends of justice. Thus, I would apply the rule of lenity, reverse and vacate seven of Thomas's convictions, and remand for resentencing on the one remaining conviction.
NOTES
[1] The State also charged Thomas with a third count of assault for pulling a knife on another man, and felony harassment for making threats against the man while on the phone with Montgomery's mother.
[2] A jail administrator later testified that inmate calls are limited to 20 minutes per call. The jail digitally records inmate calls and provides a recorded warning stating this before each call. Not all of Thomas's calls lasted 20 minutes. In some cases, Thomas called Montgomery back as soon as the 20-minute time limit had elapsed; in others, he waited hours before contacting her again.
[3] A jury found Thomas guilty of the first and second degree assault of Montgomery in that case.
[4] The State provides a summary of the calls supporting each count in this case. Our review of the jail's recordings confirms that the State's content summaries are not inaccurate: Count I (January 6, 2007, two calls)initial contact, devises self-defense theory; Count II (January 6, 2007, two calls)devises knife theory and story regarding other assault charge; Count III (January 7, 2007, five calls)devises cousin story and Montgomery's motive for lying; Count IV (January 7, 2007, six calls)additional pressure, addresses Montgomery's potential liability for lying and delivery of letter to his attorney; Count V (January 8, 2007, three calls)discusses addressing letter to his attorney and the consequences if Montgomery fails to do so; Count VI (January 8, 2007, three calls)adds additional details regarding the assault and rape and instructs Montgomery when to cry on the stand; Count VII (January 9, 2007, one call)devises money theory; Count VIII (January 9, 2007, one call) devises protection order theory.
[5] The Washington Supreme Court granted review of this case in June 2009.
[6] Former RCW 9.35.020(1) provides, in pertinent part, "No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime."
[7] This reasoning is identical to Division One's "lack of deterrence" analysis rejecting the defendant's alternate course of conduct reading of RCW 9A.72.120 in State v. Hall, 147 Wash.App. 485, 489, 196 P.3d 151 (2008) and quoted by the majority with approval:

[I]f we were to adopt Thomas' reasoning, a defendant would have no incentive to stop contacting persons after the first attempt, "as he would expose himself to criminal liability for only one count of witness tampering no matter how many efforts he made to induce the witness to disappear or testify falsely."
Majority at 218 (quoting Hall, 147 Wash.App. at 489, 196 P.3d 151).
[8] The court also considered the specific language of former RCW 9.35.020(2) in reaching its conclusion. Leyda, 157 Wash.2d at 347, 138 P.3d 610. But the court considered these additional provisions merely as "further support," not the essential element, of its analysis of the statutory language. Leyda, 157 Wash.2d at 347, 138 P.3d 610. Furthermore, the court not only held the statute was ambiguous but also engaged in a full analysis of legislative intent, including the statute's legislative history, in reaching its conclusion regarding the intended unit of prosecution. Leyda, 157 Wash.2d at 345, 348-50, 138 P.3d 610. Here, RCW 9A.72.120 is ambiguous, i.e., "susceptible to more than one reasonable interpretation." Armendariz, 160 Wash.2d at 110, 156 P.3d 201. Thus, a comparison of the similar statutory language is sufficient merely to establish that both statutes are subject to multiple, reasonable interpretations.